REDD *v.* STATE.

Opinion delivered July 9, 1898.

1. EVIDENCE—ADMISSIBILITY.—On the second trial of a felony it was agreed that the testimony of a deceased witness at the first trial was as read from the bill of exceptions prepared for the first appeal. In the midst of this testimony, the bill of exceptions contained this recital in parenthesis: "At this point attorneys for defense objected to the witness testifying, whereupon the pardon was produced, restoring him to citizenship." *Held* that the facts set forth in the above recital were no part of the testimony of the deceased witness, and could not be read, under the agreement. (Page 480.)

2. JUDGMENT—CONCLUSIVENESS.—A ruling on a former trial as to the competency of a witness is not *res judicata* on a second trial. (Page 481.)

3. DECEASED WITNESS—COMPETENCY.—The party against whom the testimony of a deceased witness in a former trial is offered is allowed to make every objection which could be made if the witness were in life and personally offered for the first time. (Page 482.)

4. PAROL EVIDENCE—PARDON.—It is not admissible to prove a pardon by parol evidence, without showing that the pardon itself, or a certified copy of it, could not be introduced. (Page 482.)

5. PARDON—EFFECT.—A pardon which recites that it is a "full and free pardon of and from the offenses of burglary and larceny, or burglary or larceny, either grand or petit, and of all felonies of which he [the grantee] may have heretofore been convicted in any court or courts of this state," is sufficient as a pardon of the offenses of burglary and larceny, both grand and petit, no matter in what county conviction for these offenses may have been had. (Page 483.)

6. SAME—SURPLUSAGE.—A recital in a full and free pardon that it is given for the purpose of restoring the grantee to citizenship is superfluous. (Page 485.)

7. SAME—DELIVERY—ACCEPTANCE.—Delivery of a pardon to an attorney representing the grantee is sufficient, and an acceptance will be presumed. (Page 485.)

8. WITNESS—OATH.—A witness who was sworn when testifying in chief need not be resworn on being subsequently recalled. (Page 486.)

9. TRIAL—ARGUMENT OF COUNSEL.—A statement by the prosecuting attorney to the effect that "every voice in the court house would bear out the conclusion that the testimony was sufficient" to support a verdict of guilty, while improper, was not prejudicial where the court admonished the counsel to confine himself to the evidence, and charged the jury to try the case according to the law and the evidence. (Page 486.)

·10. SAME—INSTRUCTION—ALIBI.—An instruction to the effect that the defendants could not avail themselves of an alibi unless it was shown that at the time of the killing they were at some other place than the place of the commission of the crime charged is not open to the objection that it meant that, in order for one of the defendants to avail himself of an alibi, he would have to show an alibi for the other defendant also; especially where no specific objection was taken. (Page 487.)

11. HANDWRITING—PROOF BY COMPARISON.—A witness who has read a letter from one of the defendants, admittedly in his handwriting, may be permitted to testify that, in his opinion, another writing is in the handwriting of such defendant. (Page 488.)

Appeal from Drew Circuit Court.

MARCUS L. HAWKINS, Judge.

*H. King White* and *Jos. W. House*, for appellants.

The court erred in permitting James Robinson to testify in this case, because he had been convicted of an infamous crime, and his competency had never been restored by a proper pardon. As to general purpose and effect of a pardon, see: 18 How. 307; 44 Ark. 122; 49 Ark. 176. A conditional pardon, before the condition is complied with, does not restore competency as a witness. Bish. Cr. Law, § 915, subhead 2; 30 Am. Rep. 395; 23 Am. Dec. 150; 8 W. & S. 98; 49 Am. Rep. 684; 17 Am. St. Rep. 832; 53 Am. Rep. 397; 8 Ct. Cl. 460; 7 *ib.* 443; 7 *ib.* 50; 47 Am. Dec. 557; 135 Mass. 48; 19 Am. Rep. 679; 10 S. E. 611; 53 Am. Rep. 397; 1 Parker, Cr. Rep. 52, 57. In order to restore competency, the pardon must be full and free. Whart. Cr. Ev. § 365; 18 How. 307; 24 Pick. 280. Delivery and acceptance are essential to effectiveness of a pardon. 1 Bish. Cr. Law, § 907; 7 Peters, 150; 8 Blatchf. 89, 96; 10 Ark. 284; 26 Ark. 74; 3 Benedict, 307; 84 Am. Dec. 433. If a witness, when sworn, is incompetent to testify, but, subsequently, his competency is restored by a pardon, he must be sworn again before he can testify. 1 Leach, C. C. 128; *ib.* 237; 8 Ore. 178; 58 Hun, 482; 1 Bish. Cr. Law (6 Ed.), § 914; Whart. Cr. Ev. (9 Ed.) 361. The pardon of witness John Henry was not properly proved. Mere proof of the granting of a pardon, without proof of its scope, its delivery, etc., was not sufficient to make witness competent. Whart. Cr. Pl. & Pr. § 535. Facts disqualifying witness being

shown, the party introducing him must show that his disability was properly cured or removed. 50 Ark. 157; 6 Abb. Pr. (N. S.) 341; 14 Mass. 234; Weeks, Dep. § 515; 17 Ohio, 51; 56 Tex. 119; 29 Ia. 485; 48 Ark. 133. Testimony of an absent or deceased witness, at a former trial, cannot be proved by bill of exceptions taken at that trial. 54 Ill. 432; 102 Ill. 555. Merely having once seen writing of a person does not render competent a witness' opinion as to genuineness of writing alleged to be that of said person. 24 Ill. 595; 50 Cal. 462. It was error for the court to permit counsel for state, in his closing argument, to tell the jury that "if you do find the defendants guilty, every voice in this court house will bear you out in the conclusion that the testimony was sufficient." Remarks and arguments calculated to subject the jury to the stress of outside influence and sentiment are improper and prejudicial. 44 Wis. 282; 49 Ind. 34; 14 S. W. 566; 30 N. W. 630; 79 N. Car. 589; 4 N. E. 911; 52 N. W. 873; 38 Kas. 53; 36 O. St. 201; 82 Mo. 67; 66 Mo. 588; 100 Ind. 268; 48 Ark. 131; 61 Ark. 130. Nor should counsel comment upon evidence which has been ruled out, or facts not in evidence. 15 Neb. 20; 66 Mo. 165; 70 Tex. 67; 5 Atl. 838; 61 Ia. 559; 22 Mo. App. 97; 24 *ib*. 65. The eighth instruction given for the state was erroneous because it made proof of an *alibi* for both defendants necessary to the availability of the plea for either. 63 Ark. 457. It was improper for the jury to be allowed to mingle with the crowd, and observe the sentiment against defendants, before reaching their verdict. 57 Ark. 1; 12 Ark. 782; 34 Ark. 341; 21 Kas. 480. The verdict is totally unsustained by the evidence, and should be set aside. 24 Mo. App. 339; 18 Ill. App. 222; 29 Kas. 81; 37 Ia. 316; 2 Ark. 360; 5 Ark. 407; 6 Ark. 86; *ib*. 428; 10 Ark. 638; *ib*. 491; 26 Ark. 309; 39 Ark. 491. In criminal cases, where the verdict is greatly against the weight of the evidence, a new trial will be granted. 13 Ark. 712; 34 Ark. 632, 639, 640.

*E. B. Kinsworthy*, attorney general, for appellee.

The governor may annex any condition to a pardon, so it be not illegal, immoral, or impossible. 10 Ark. 284. Pardons, like deeds, are construed most strongly in favor of the grantee.

10 Ark. 284; Bish. New Cr. Law, § 908; Whart. Cr. Pl. & Pr. § 523. Where a pardon contains a condition subsequent, it goes into effect immediately, and so continues until condition broken. 8 W. & S. 197; 1 Bish. New Cr. Law, § 914; 10 Ark. 284. If an impossible condition is annexed to a pardon, the condition is void, and the pardon absolute. 61 Ark. 364; 1 Bish. New Cr. Law, § 915; Whart. Cr. Pl. & Pr. § 533; 4 Call (Va.), 35. The prosecuting attorney was the agent of Robinson in securing his pardon, and hence could accept same for him. 23 Tex. App. 287; 66 Mo. 266; 73 Ala. 517. The circumstances show delivery and acceptance. 18 Tex. App. 498. Placing the pardon in the hands of a third party, with the intention that he should deliver it, was a sufficient delivery. 3 Wash. Real Prop. pp. 288, 289; Tied. Real Prop. §§ 813, 814; Jones, Real Prop. § 1272; Williams, Real Prop. pp. 189, 191. The pardon being for the grantee's benefit, acceptance is presumed. Whart. Cr. Pl. & Pr. § 583; 31 O. St. 206. Appellant waived all objection grounded upon failure to re-swear witness after he was pardoned, by failure to object at the time. Whart. Cr. Ev. § 359; 3 Rice, Ev. 259. A convict is not utterly incapable of taking an oath. Sand. & H. Dig., §§ 2910, 2912; 49 Ark. 176. An oath is binding upon him. 10 Ohio, 220; 10 Johns. (N. Y.) 167; 23 N. Y. 85; McLean, Cr. Law, § 865; 2 Whart. Cr. Law, §§ 1280 and 1254. The extent to which a cross-examination may be permitted is largely within the discretion of the court, and abuse of this discretion must appear to constitute error. Clark's Cr. Proc. 550; 7 Am. & Eng. Enc. Law, 108, 109; 61 Ark. 52; 3 Rice, Ev. § 219; 37 Ohio St. 178; 121 Mo. 201; 121 Ind. 423; 88 Wis. 545; 131 N. Y. 650. A witness may be cross-examined as to his interest in the case. 18 Ore. 440; 3 S. Dak. 134; 40 Neb. 11; 7 Am. & Eng. Enc. Law, 112, 113. Having once seen a person write is sufficient to entitle a witness' opinion as to the genuineness of writing said to be that person to go to the jury. 1 Greenl. Ev. § 577; Whart. Cr. Ev. §§ 551–553; 3 Rice, Ev. 109; 9 Ill. 89. It was not error to allow the prosecuting attorney to express his belief that the witnesses for defense were "a lot of liars." 58 Ark. 353; 34 Ark. 658; 66 N. W. 41; 22 So. 497; 104 Ind. 467; 105 Ind. 499. The subject and

range of the argument of counsel is a matter within the sound
discretion of the trial court, and all presumptions are in favor of
the proper exercise of this discretion. 4 Am. & Eng. Enc. Law,
875; 34 Ark. 650; 22 S. W. 1021; 55 Mo. 520; 92 Ind. 477;
55 N. W. 753. The arguments used by counsel for state were
proper. 50 N. W. 570; 71 N. W. 504; 22 S. W. 1021; 36 S.
W. 550; 75 Mo. 357; 124 Ill. 218; 2 Enc. Pl. & Pr. 713, 714;
2 West. Rep. 345; 28 N. Y. 327; 102 Ind. 550; 4 N. E. 870,
876; *ib.* 63, 68; 9 Pac. 622; 22 S. W. 1021; 36 *ib.* 550; 8 West.
Rep. 393; 5 N. E. 203; 27 N. W. 147; 11 N. W. 703; 50 *ib.*
570; 75 Ind. 215, 219; 105 Ind. 469, 480; 40 Ill. 488, 501;
76 Mo. 121, 125; 53 Mo. 509, 514; 79 Mo. 461; 75 *ib.* 357;
87 *ib.* 615; 56 Miss. 299, 308; 20 Kas. 650, 651–5; 27 Ga.
649; 68 Ala. 476; 27 N. W. 147; 11 *ib.* 174; *ib.* 703; 6 N.
E. 126; 9 Pac. 407; 69 Wis. 32; 7 Lea (Tenn.), 232; 14 Lea,
424; 95 Ill. 394, 405; 2 Ell. Genl. Pract. § 693, p. 821; 4 Am.
& Eng. Enc. Law, p. 875–9, and notes. This court will not
reverse for want of evidence where any evidence supports the
verdict. 43 Ark. 317; 18 Ark. 303, 366; 43 Ark. 367; 51 Ark.
115; 47 Ark. 367..

*H. King White* and *Jos. W. House*, in reply.

The condition in this pardon of Robinson is a condition
precedent. 64 Cal. 31. A pardon must recite the indict-
ment, the judgment and conviction, to be effective. 43 Cal.
439; 37 Am. Rep. 463; 5 Ind. 359; 1 Jones, Law (N. C.), 1;
2 Hawk. Pl. Cr. ch. 37, § 8, p. 533; 4 Bl. Comm. p. 339.
Even if the pardons were sent to the prosecuting attorney to
be delivered to the grantee, they are not good until they are
accepted by the grantee. 11 Barb. 34; 1 Allen, 255; 12 Johns.
419; 6 Am. Dec. 146; 12 Am. Dec. 196; 3 Wash. Real
Prop. 292. There is no presumption that a pardon is accepted
because it is intended for the benefit of the grantee. 4 Gilm.
159. A pardon to restore citizenship does not restore com-
petency as a witness. 43 Cal. 439. It was incumbent upon
the prosecution to show that a pardon was granted to, delivered
to and accepted by witness Henry. 14 Mass. 234; 50 Ark.
157. Where a record of a lost writing was kept, the writing

cannot be proved by parol, but only by a certified copy. 28 S. W. 536; Underhill, Ev. § 208; 18 Tex. App. 521, 522.

Wood, J. This appeal is from a conviction of murder in the first degree.

First. One of the grounds of the motion for new trial is as follows: "Because the court erred in permitting the prosecution to read to the jury, as evidence in the case, the testimony of John Henry, given at a former trial of this case; the same being irrelevant, incompetent, and no proper foundation having been laid for the introduction of same." Witness H. W. Wells read from the bill of exceptions prepared for the first appeal what counsel on both sides agree was the testimony of John Henry. In the midst of this testimony, as set forth in said bill of exceptions, occurs this recital in parenthesis: "At this point attorneys for defense objected to the witness testifying, whereupon the pardon was produced restoring him to citizenship, so the witness was permitted to testify and proceeded as follows," etc.: "The defendant at the time objected to the testimony of the said John Henry being read to the jury, on the ground that no proper foundation had been laid therefor, and because the said Henry had been convicted of a felony, and it was not shown that he had ever been pardoned."

(1) Without setting it out in detail, it suffices to state that the testimony of Henry tended to connect the defendants with the crime charged, and was therefore relevant.

(2) The state showed that since the first trial John Henry had moved to Mississippi; also, that he had been killed. Therefore the proper foundation was laid for the introduction of his testimony taken at a former trial.

(3) Was it competent? The defendants proved that on the 1st of October, 1892, John Henry was sentenced to the penitentiary for the crime of grand larceny. The rule is well settled that the testimony of a witness, since deceased, taken at a former trial, "is open to all the objections which might be taken if the witness were personally present." *St. Louis, I. M. & S. R. Co.* v. *Harper*, 50 Ark. 159; 1 Greenl. Ev. § 163. If witness Henry had been present at the trial, and the defendants had objected to his testimony, showing that he had been ren-

dered ·incompetent to testify by reason of conviction of an infa-
mous crime, it would then have devolved upon the state to show
that his competency had been restored by the pardon of such
offense before said witness could testify.   Under the rule. *supra*,
the testimony of the witness at the former trial stands in lieu
of the witness himself, and precisely the same proof should be
made as to the competency of this evidence as should be made if
the witness were present in person to testify.   What is the effect
of the recital in the bill of exceptions in the former trial, which
was read in evidence on this trial as a part of the testimony of
John Henry, to-wit:   "(At this point the attorney for the de-
fendants objected to the witness testifying, whereupon the par-
don was produced, restoring him to citizenship)"?   It is argued
in the able brief of the attorney general that this recital shows
that John Henry was a competent witness at the time he testi-
fied at the first trial, and therefore his evidence was competent
on the second trial, unless it had been shown by the defendants
that he had been rendered incompetent since his evidence was
taken at the first trial.   We do not consider this position ten-
able for several reasons:

(*a*)   This was a mere parenthetical recital in the bill of
exceptions, in the midst of what purported to be, and what
counsel agreed was, the testimony of John Henry; but the facts
set forth in this recital were no part of John Henry's testi-
mony, and the facts which this recital disclose were not agreed
to by counsel, and could not be proved by reading from the bill
of exceptions in the former trial.   *Stern* v. *People*, 102 Ill. 555;
*Roth* v. *Smith*, 54 Ill. 432.

(*b*)   If these facts could be established that way, the
effect would only be to show that John Henry was held compe-
tent to testify at the former trial, which is · proved as well,
without the recital, by the fact in evidence that he did testify.

(*c*)   What was ruled as to the competency of the witness
John Henry at the first trial is not *res judicata* on the second
trial.   The reversal and remand of the first case for new trial
sent the whole case back to be tried *de novo*.   The defendants
on the second trial could raise anew any objection to the compe-
tency of John Henry as a witness that they raised on the first
trial, and every objection which could have been raised.   For

instance, if they had overlooked any fact at the first trial which, if known, would have rendered his testimony incompetent, they had the right to bring forward such fact on the second trial, in order to have his testimony, taken on the first trial, declared incompetent.

(*d*)  This brings us back to the rule, announced in the beginning, that "the party against whom the testimony of a deceased witness in a former trial is offered is allowed to make every objection which could be made if the witness were in life and personally offered for the first time." *House* v. *Camp*, 32 Ala. Rep. 541.

The record in regard to the proof of pardon is as follows: "H. W. Wells, prosecuting attorney, testified: Question. State whether you know John Henry was pardoned before he testified, and by whom? Answer. Yes, sir; he was pardoned. (The defendants objected to this question and answer, and asked that it be excluded from the consideration of the jury. The court overruled their objection, and the defendants excepted.) Question. What became of that pardon? Answer. I obtained the pardon, and made profert of it in the case when John Henry was being examined before the court; and after the court was over I gave the pardon to John Henry, and I have never seen it since." The best evidence of a pardon under our law is either the original or a certified copy. Section 2880, Sand. & H. Dig., provides: "Copies of official acts of the governor and * * * of all records deposited in the office of the secretary of state and required by law there to be kept, certified under his hand and seal of office, shall be received in the same manner and with like effect as the original." Section 3166 of Sand. & H. Dig. is as follows: "The secretary of state shall keep a full and accurate record of all the official acts and proceedings of the governor." Section 3168 provides: "He shall keep a seal of office, surrounded with the words 'Seal of the Secretary of State, Arkansas,' and shall make and deliver, to any parties requiring same, copies of any * * * commissions or other official acts of the governor, and all rolls, records, etc., deposited in his office and required there to be kept, and certify said copies under his hand, and affix the seal of his office thereto."

It is an old, familiar, and wise rule of law that oral evi-

dence can not be substituted for any instrument which the law requires to be in writing, so long as the writing exists, and is in the power of the party. 1 Greenl. Ev. § 86; Whart. Ev. § 63. Here the nature of the fact to be proved, to- wit, a pardon, disclosed the existence of some evidence of that fact in writing, of an official character, more satisfactory than oral proof, and therefore the production of such evidence, or a showing why it could not be produced, was demanded, before any oral evidence of the fact could be admitted. 1 Greenl. Ev. § 85, and authorities cited in note *d.* The rule, so far as we know, is without exception, and the authorities uniformly so declare it. *Brown* v. *State,* 28 S. W. Rep. 536; *Hunnicutt* v. *State,* 18 Tex. App. 499–520; Underhill, Cr. Ev. §. 208.

The wisdom of such a rule is clearly demonstrated in this case by the general and indefinite manner in which it was attempted to prove the pardon by oral evidence; the witness simply stating that he obtained *a pardon* for John Henry, and that John Henry *was pardoned,* leaving to inference that the pardon was for the specific offense of which said Henry had been convicted. Mr. Wharton says: "When it is sought to rehabilitate a convict by means of a pardon, the pardon must accurately cite the conviction." Whart. Cr. Pl. § 535.

If it be conceded that the original was lost, still it was not shown to have been beyond the power of the state to produce a certified copy of the pardon. As appellants showed that John Henry, if present, was incompetent to testify, and the state has offered no evidence, such as the law requires, to controvert that fact, it follows that the court erred in permitting the testimony of such witness taken at a former trial to be read to the jury; and, as such evidence was prejudicial, the error in admitting it entitled appellants to a new trial.

Second. Was it error to admit the testimony of witness James Robinson? He claimed to have been an eyewitness to the alleged murder of W. F. Skipper. This witness was shown to have been convicted of the crimes of burglary and grand and petit larceny. No less than three pardons were produced for him when he was first offered, and two others when he was re-examined. After Robinson had first testified, appellants moved to exclude his testimony for incompetency growing out of the con-

viction of petit larceny, of which they alleged he had never been pardoned. The state then produced the third or last pardon, which. is as follows: "Whereas, James Robinson, of Drew county, Arkansas, has been duly convicted in a certain court or courts of this state of certain offenses, including those of burglary and larceny; now, therefore, I, Daniel W. Jones, Governor of Arkansas, by virtue of the power and authority in me vested by the constitution of this state, do hereby grant unto the said James Robinson full and free pardon of and from the offences of burglary and larceny, or burglary, or larceny, either grand or petit, and of all felonies of which he may have heretofore been convicted, in any court or courts of this state; hereby fully absolving him of and from all such judgments of such courts, and all the effects and consequences thereof; this pardon being for the purpose of restoring said Robinson to citizenship." Proper exceptions were saved to the reading of this pardon. Since a conviction of petit larceny disqualifies as. a witness (*Hall* v. *Doyle*, 35 Ark. 445), unless the above pardon was good for that offense, the testimony of Robinson was incompetent. But, if it was a good pardon for petit larceny, it. was also good for the other offenses of burglary and grand larceny, of which Robinson is shown to have been convicted;. for all these offenses are described with the same certainty. Was it a good pardon?

(1) A pardon must be construed most strictly against the king or the state, and most beneficially for the subject. 4 Bl.. Comm. *401. · Like any other grant, if its meaning be in doubt, it is taken more strongly against the grantor. 1 Bish. New Cr. Law, § 908; *Ex parte Hunt*, 10 Ark. 284: Whart. Cr. Pl. & Pr. § 523, and authorities cited. It can be clearly understood from this pardon that the governor intended to pardon James. Robinson of the offenses of burglary and grand and petit larceny, no matter in what county conviction for these offenses. may have been had. These particular offenses are designated in the pardon, and these were the particular offenses of which it was shown James Robinson had been convicted. If it is possible to show that the pardon was intended to cover and does cover the offense of which the witness was convicted, the pardon, if in other respects valid, is sufficient. *Com. use of Lawson*

v. *Ohio & Penn. R. Co.*, 1 Grant (Pa.), Rep. 329; 1 Bish. Cr. Law, § 906; *Martin* v. *State*, 21 Tex. App. 1; *Hunnicutt* v. *State*, 18 Tex. App. 500. If appellants had shown that Robinson had been convicted of some other offenses than those named in the pardon, it may be that the terms "and of all felonies of which he may have been heretofore convicted," used in the pardon, would not have covered such offenses. In such a case the pardon may not have been allowed, upon the theory that the governor "was not acquainted with the heinousness of the crime, but deceived in his grant." 2 Hawkins, Pl. Crown, c. 37, § 8533; *State* v. *Foley*. 15 Nev. 64; *State* v. *McIntire*, 1 Jones (N. C.), 1; *State* v. *Leak*, 5 Ind. 359. But no imposition or fraud upon the governor could reasonably be inferred from the language of this pardon. He knew the nature of the crimes named which he was pardoning, and what a conviction thereof meant.

(2) The pardon was full and free for the offenses named, and as such, in the eyes of the law, removed every vestige of infamy from the witness which had attached by reason of the convictions mentioned. It placed him *in statu quo* in his relations to the state. The words, "for the purpose of restoring said Robinson to citizenship," were superfluous. *State* v. *Foley*, *supra; Ex parte Hunt, supra.*

(3) Delivery and acceptance are essential to a valid pardon. 1 Bish. Cr. Law, § 907; *United States* v. *Wilson*, 7 Pet. 150. On this point H. W. Wells testified as follows: "I received this pardon in yesterday's mail. It has been in my possession ever since. It was procured by telegraphing." The pardon was absolute. It is manifest that the governor intended to grant it. He had parted with all control over it, and, as it was highly beneficial to the grantee, an acceptance of it, we think, in the absence of any proof to the contrary, must be presumed. Whart. Pl. & Pr. § 533; *Elsberry* v. *Boykin*, 65 Ala. 336; 2 Greenl. Ev. § 297. Robinson testified under this pardon. Without it, he could not have testified at all. The circumstances show delivery and acceptance. *Hunnicutt* v. *State*, 18 Tex. App. 520. H. W. Wells was an attorney. He made application for the pardon for James Robinson, and it was delivered to him for Robinson. It may reasonably be inferred

from this that he was representing Robinson. "The principles," says the supreme court of Alabama, "applicable to the delivery of a pardon and of an- ordinary deed of gift must be considered as analogous. In the case of a deed, its delivery ·is generally said to be complete when the grantor has parted with his entire control or dominion over the instrument, with the intention that it shall pass to the grantee or obligee, and the latter assents to it, either by himself or his agent. The delivery may as well be made also to a stranger for the benefit of the grantee." *Ex parte Powell*, 73 Ala. 517. Therefore James Robinson was a competent witness. There is nothing in the fact that he was not sworn when recalled. He had been sworn in the case before, and, even if he had not been sworn, no objection was raised to his testifying without being sworn. See authorities cited in brief of attorney general. What we have said upon the subject of the delivery of the pardon of James Robinson applies equally to the pardon of John Henry.

Third. We find no error in the court's ruling upon the questions presented in the third, fifth, sixth, seventh and tenth subdivisions of appellants' brief. Most of these are not likely to arise upon another trial, and have already been often passed upon by this court,—such, for instance, as the proper foundation for the introduction of the testimony of a witness taken at a former trial, the legitimate scope of cross-examination, the remarks of counsel in argument, and the improper conduct of jurors. We would not be understood, however, as licensing a repetition of some of the remarks made by counsel, by failing to condemn same. Those made by counsel to the effect that "every voice in the court house would bear out the conclusion that the testimony was sufficient" to support a verdict of guilty were highly improper, as were also those which referred to the insurance company. Remarks which may be construed ʼas appealing to the prejudices or passion of juries, to have their verdicts influenced by the sentiment and opinion of the idle or interested spectator, or, indeed, by any other considerations than such as are grounded upon the facts and law of the case being tried, deserve the severest excoriation from the presiding judge, and will result in a reversal of the judgment here, where it seems reasonable or probable that such

remarks had any effect in producing the verdict. But, when objection was made to the remarks of counsel in regard to the insurance company, the court admonished the counsel to confine himself to the evidence, and the counsel who had made the remarks asked the jury not to consider that part of his argument. As to what was said about the voice of every one in the court room approving the sufficiency of the evidence to sustain a verdict of guilty, that was but the mere expression of the opinion of the counsel. It was in bad form, to be sure; but jurors must be presumed to be men of intelligence, and scrupulous of the oaths which they take to try cases according to the law and the evidence. The court, in a very full and fair charge for appellants, called the attention of the jurors to their duty in this respect. He told the jury that it was their duty to give the defendants the full benefit of the presumption of innocence, which was an essential and substantial part of the law of the land, and to acquit the defendants unless they felt "compelled to find them guilty as charged, by the *law* of the land and the *evidence in the case* convincing them of their guilt as charged, beyond all reasonable doubt." The court also took away from the jury by an instruction any consideration whatever of any insurance company in connection with the case, and in many other instructions fully protected every right of the appellants to have the case tried according to the law and the evidence. So we are of the opinion that the remarks of the counsel, under the circumstances, did not in any manner influence the verdict.

Fourth. We find no error in the charge of the court. It was as liberal to appellants as they could have asked. The only instruction of which they complain here, when fairly construed, does no more than tell the jury that the defendants could not avail themselves of an *alibi* unless it was shown that they were at some other place than the place of the commission of the crime charged at the time of the killing. This instruction, when taken in connection with the one on the subject of *alibi* asked and given on behalf of appellants, we do not think could possibly have misled the jury. The defendants were both on trial at the same time, and the instructions was designed to apply to both, or to each one independently, according as one

or both should claim alibi. It did not mean, as contended by counsel, that, in order for one to avail himself of an alibi, he would have to show also an alibi for the other. Moreover, the objection urged is nothing more than a mere criticism of the verbiage. If counsel desired to have the idea they contend for here more specifically presented, they should have prepared a request in the language they desired, and asked the court to give it.

(5)   The court did not err in permitting witness Lephiew to testify that he saw the plat introduced on the former trial, and that the handwriting on said plat was similar to the handwriting of Redd, and that he thought it was Redd's handwriting. Lephiew had seen and read a letter which Redd admitted he wrote. That was sufficient to establish at least a *prima facie* acquaintance of Lephiew with the handwriting of Redd, and was sufficient to admit his testimony. The weight to be attached to such testimony depends, of course, upon the credibility of the witness, and his familiarity, or lack of it, with the handwriting about which he testifies. 1 Greenl. Ev. § 577; Whart. Cr. Ev. 551, 553; 3 Rice, Ev. p. 109; *Woodford* v. *McClenahan*, 9 Ill. 89.

(6)   The twenty-seventh and twenty-eighth grounds of the motion for new trial are as follows: "That the verdict was contrary to the evidence, and was the result of passion and prejudice pervading the minds of the inhabitants of Drew county." The prosecution has proceeded upon the theory that Skipper was murdered by appellants. The defense upon the theory that Skipper committed suicide, but, if murdered, that they were not the guilty agents. These are purely questions of fact, and, inasmuch as there must be a new trial for the error of law mentioned *supra*, the majority refrain from expressing any opinion concerning them. Speaking for myself, only, upon this point, after a careful examination of this large record, which I necessarily had to make in preparing this opinion, my conclusion is that, under the rule announced by this court in *Richardson* v. *State*, 47 Ark. 567, there is evidence to support the verdict here, both as to the *corpus delicti*, and as to connection of the defendants with the crime charged. For the

error in admitting the testimony of John Henry, the cause is reversed, and remanded for new trial.