# LEW W. COCHRAN v. OTTO J. STEIN and Others.[1]

June 28, 1912.

Nos. 17,422—(36).

**Promissory note — burden of proof on indorsee.**

Where, in an action by an indorsee of a negotiable note, it was conceded that the note had been obtained from the defendants, the makers, by the fraud of the payees, the burden was cast upon the plaintiff to establish his claim that he purchased the note from the payees for value, before maturity, in due course of business, and without notice.

**"In due course of business."**

"In due course of business" involves indorsement to the holder before maturity, where the instrument is payable to order.

**Question of fact.**

Whether the plaintiff was a bona fide purchaser of the note sued on *held*, under the evidence, for the jury.

**Evidence — specimens of handwriting.**

Where the genuineness of handwriting is in issue, specimens of handwriting, admitted or proved to be genuine, are admissible for the purpose of comparison.

**Same — lost instrument.**

A witness, who has seen a lost instrument alleged to have been written and signed by a certain person, may, if otherwise competent, testify, from a comparison of admittedly genuine specimens of such person's handwriting introduced in evidence for the purpose of comparison, that the lost instrument was written and signed by such person, though the witness has never seen any specimens of such person's handwriting, either admittedly genuine or otherwise, other than that in which the lost instrument was written and signed and the exhibits submitted to him for comparison.

[1] Reported in 136 N. W. 1037.

[Note] Fraud in obtaining the execution of a note as a defense against a bona fide holder, see note in 36 L.R.A. 434 and note in 1 L.R.A.(N.S.) 1075.

Presumptions and burden of proof in action by purchaser of note, see note in 17 L.R.A. 326.

Action in the district court for Stearns county to recover $867 upon a promissory note. The replies to the separate answers were general denials. The case was tried before Taylor, J., and a jury which rendered a verdict in favor of defendants. From an order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*John A. Roeser,* for appellant.

*Stewart & Brower,* for respondent.

PHILIP E. BROWN, J.

Action to recover the amount claimed to be due on a negotiable promissory note by an alleged bona fide purchaser thereof. Defense, a denial of the plaintiff's alleged bona fide holdership, and allegations, in substance, that the note was obtained by fraud. The case was tried to a jury, and the defendants had a verdict. This is an appeal from an order denying the plaintiff's motion in the alternative for a judgment notwithstanding the verdict or for a new trial.

It appeared on the trial that the defendants, on September 16, 1903, executed their negotiable promissory note, dated on that day, therein promising to pay to O'Connell & White, or order, $867, on July 1, 1906, which note had been indorsed, without recourse, by the said O'Connell & White to this plaintiff. The plaintiff there claimed that he purchased the note from the payees in February, 1904, for value, in due course of business, without notice, and that it was then and there indorsed by them to him. All of these claims the defendants denied, and claimed especially that the note was not indorsed until after its maturity.

The plaintiff made the following concession on the trial: The note referred to was given to O'Connell & White for a part of the purchase price of a stallion named Royal, sold by them to the defendants; the note was obtained by them from the defendants by fraudulent representations, relied upon by the defendants, as to the breeding qualities of the animal, and which were then known to O'Connell & White to be untrue; that the horse was of no value as a breeder, which was the purpose for which he was sold to the defendants, and was returned by the defendants to O'Connell & White in

May, 1904, and was retained by them; and, further, that as against O'Connell & White these defendants have a defense to the note in suit upon the grounds above stated.

The plaintiff has twenty-one assignments of error, twenty of which are based upon his contention that it was conclusively established on the trial that he was a bona fide purchaser and holder of the note from the payees—which claim he concedes is the only issue in the case—and these twenty assignments may be grouped and require no separate discussion. The other assignment will be adverted to later.

1. Immediately after the plaintiff's concession, made on the trial and above referred to, to the effect that the note in suit had been obtained by fraud from the defendants, the burden was placed upon him to establish his claim that he purchased the note from the payees for value, before maturity, in due course of business, and without notice. Park v. Winsor, 115 Minn. 256, 132 N. W. 264. And the phrase "in due course of business" required proof on his part sufficient to fairly satisfy the jury that the note was indorsed to him by O'Connell & White, before its maturity, to entitle him to recover in this action; for one who takes negotiable paper, payable to order, otherwise than by indorsement, does not take it in due course of business, and hence is not a bona fide holder. 1 Dunnell, Minn. Dig. §§ 951, 929.

As before stated, the plaintiff claims that the note in suit was indorsed to him in February, 1904, while the defendants deny that the plaintiff was a bona fide purchaser, and specifically claim that the note was not indorsed by the payees, O'Connell & White, until after July 1, 1906, the date when the note matured. After careful consideration of the evidence, we have concluded that so far as the sufficiency thereof is concerned, to sustain the verdict, the only question necessary to discuss or determine is the claim of the plaintiff that he purchased the note from, and also that it was indorsed to him by, the payees before maturity.

It would serve no useful purpose to attempt to detail the testimony on these questions. The plaintiff testified that he purchased the note, and that it was indorsed to him by the payees therein named, in the early part of February, 1904. His testimony in the latter

regard was corroborated by that of his wife, attorney, and stenog rapher, and also by that of a money lender of Crawfordsville, Indiana, the place of the plaintiff's residence, and also by the cashier of the First National Bank of St. Cloud. For the defendants, testimony was offered by two of them tending to show that between the twelfth and twentieth of July, 1906, and after the maturity of the note, the plaintiff admitted that his negotiations for the purchase of the note were not closed with O'Connell & White, and two of the defendants testified that they saw the note at the time last mentioned, and that it did not then bear the indorsement of O'Connell & White. Furthermore, a witness, one Keller, who had been the cashier of a bank at Albany, in this state, for about fourteen years, testified that in November, 1906, he received through the mails, a letter, purporting to be from the plaintiff, written in longhand, and signed with his name, from Crawfordsville, Indiana, which, shortly after its receipt, he exhibited to John Gates, one of the defendants in this action, but that this letter was subsequently lost. He further testified that in his opinion the letter, including the signature, was in the plaintiff's handwriting, and that it in effect requested him to advise the plaintiff concerning the financial responsibility of these defendants, and stated that he, the plaintiff, was contemplating the purchase of the note here involved, and desired information concerning the standing of the defendants before closing the deal. This testimony was corroborated by that of Gates to the extent that in November, 1906, a letter was shown him by Keller purporting to have been signed by the plaintiff. Other evidentiary facts not necessary to state, favorable to the defendants' theory generally, appeared.

Under all of the evidence above summarized, remembering that the burden rested on the plaintiff to establish the fact that he was a bona fide purchaser of the note, we think it clear, and hold, that the issue was for the jury to determine, and that it does not so clearly appear from the evidence that the plaintiff acquired the note, as he claims, that a different inference could not reasonably be drawn therefrom.

2. The plaintiff claims, however, that the ruling of the court, admitting Keller's testimony concerning the receipt and contents of the letter before referred to, and the plaintiff's signature thereto, was

error—and this is the separate assignment of error above referred to—and it may be conceded, for the purpose of this discussion, that, if error it was, such was prejudicial to the extent of constituting it reversible error.

In addition to the facts above stated, concerning this testimony, it appeared that the witness Keller was shown, both on the trial and shortly prior to his testifying, several writings admittedly made by the plaintiff, with his genuine signature appended thereto, and he was allowed to testify, over the objection and exception of the plaintiff, that the said letter was written and signed by the plaintiff. Aside from the fact that the witness had been engaged in the banking business, as stated, for about fourteen years, there was no evidence of his special qualification to testify upon the question of the identity of handwritings, and it was conceded that he had never seen any of the plaintiff's handwriting prior to the receipt of the said letter, and there was no evidence that he saw any of the same thereafter until the above-mentioned exhibits were submitted to him, or that he ever received any other written communication from the plaintiff, or purporting to be from him. The witness had never seen the plaintiff write.

The question involved, as stated in Hammond v. Wolf, 78 Iowa, 227, 232, 42 N. W. 779, the leading case on the point here involved, is as follows: "Is the opinion of a witness as to the genuineness of a disputed lost signature, which he has seen, based upon a comparison of his recollection of it with a signature of the same person in evidence, and admitted to be genuine, competent?"

While this precise point has never been decided in this state, our decisions, we think, clearly foreshadow the rule which should be adopted. This court has held that, on the trial of an issue as to the genuineness of certain handwriting, instruments concededly genuine are admissible in evidence for the purpose of comparison. Morrison v. Porter, 35 Minn. 425, 29 N. W. 54, 59 Am. Rep. 331. It has further been held that "to render a witness competent to testify as to the genuineness of the signature of another, as one having personal acquaintance with his handwriting, it is not necessary that he should have seen the party write. Such personal acquaintance may be ac-

quired by having seen papers, purporting to be the handwriting of the party, and which he has acknowledged or acquiesced in as being genuine." Berg v. Peterson, 49 Minn. 420, 52 N. W. 37. And in the Morrison case, supra, it was stated at page 426:

"In general, and from necessity, the authenticity of handwriting must be subject to proof by comparison of some sort, or by testimony which is based upon comparison between the writing in question and that which is in some manner recognized or shown to be genuine. This is everywhere allowed, through the opinions of the witnesses. who have acquired a knowledge, more or less complete, of the hand-writing of a person, as by having seen him write, or from acquaint-ance with papers authenticated as genuine. In such cases the con-ception of the handwriting retained in the mind of the witness be-comes a standard for comparison, by reference to which his opinion is formed and given in evidence."

The principal ground upon which the plaintiff bases his claim that. this testimony was incompetent is that it was necessary for the wit-ness Keller to have been acquainted with the plaintiff's signature at. the time of his receipt of the alleged letter, to warrant his testimony to its genuineness. We hold that no such qualification should be at-tached to the rule, and that the court did not err in admitting the-testimony; the plaintiff's objections going merely to the weight, and not to the competency, thereof. We are unable to perceive, on princi-ple, why the question of the competency of the witness should depend upon the witness' previous, instead of his subsequent, knowledge of the handwriting of the person whose handwriting is in controversy. In the note to University of Illinois v. Spalding [71 N. H. 163] 62 L.R.A. 817, 873, this question is discussed as follows: "A kind of comparison distinct from that hitherto treated is that used to estab-lish the handwriting of instruments which have been lost, or are otherwise incapable of being produced in court. This comparison of a mental exemplar in the mind of the witness of the character of the disputed handwriting which is not present in court, with proved specimens which are present, is, it will be seen, the converse of that common method of proof of handwriting hitherto spoken of as pseudo. comparison, namely, comparison of the disputed writing, which is.

present in court, with the mental exemplar, retained by the witnesses, of other writings which are not so present, and it would seem that the same rules would properly apply to both."

It is true that there is some conflict of authority on this question; but we think that both reason and the weight of authority sustain the rule above announced. Hammond v. Wolf, supra; State v. Shinborn, 46 N. H. 497, 88 Am. Dec. 224; Redd v. State, 65 Ark. 475, 47 S. W. 119.

The question of the competency of an expert rests largely in the discretion of the trial court. McDonough v. Cameron, 116 Minn. 480, 134 N. W. 118.

We find no reason for interfering with the verdict on this ground. Order affirmed.