# FELIX G. COLE v. GUST JOHNSON and Another.[1]

November 13, 1914.

Nos. 18,738—(52).

**Promissory note — fraud of payee — purchaser for value.**

Two issues were submitted to the jury in this action brought upon a promissory note by an alleged *bona fide* holder: ·One was whether·fraud of the payee induced the deal in which the note was given, and the other whether plaintiff was a *bona fide* holder. Upon this appeal by the makers of the note it is *held:*

(1) It cannot be assumed that the jury found against defendants upon the defense of fraud, so as to render error in the submission of the other issue harmless.

(2) The evidence tended to prove circumstances which made it a question for the jury whether plaintiff's testimony, that he had bought the note before maturity and paid $500 therefor, was true, although not contradicted by any direct testimony. An instruction to the contrary was error.

(3) It would seem the jury should have been instructed that the burden was upon plaintiff to show that he became a purchaser for value, before maturity, in the ordinary course of business, and without notice, if they found the defense of fraud true; but since the evidence as to the fraud, which is neither printed nor referred to in the briefs, might have been such that the burden of proof still rested on defendants in this respect we are not required to reverse because the trial court refused to state that it rested ·on plaintiff.

Action in the district court for Hennepin county to recover $500 upon a promissory note. The defense is stated in the opinion. The case was tried before Steele, J., and a jury which returned a verdict in favor of plaintiff for the sum demanded. From an order denying their motion for a new trial, defendants appealed. Reversed.

*John N. Berg* and *Adolph E. L. Johnson,* for appellants.

*J. H. Green* and *James M. Pulliam,* for respondent.

[1] Reported in 149 N. W. 466.

HOLT, J.

The suit is upon a promissory note for $500 by one who claims to be a *bona fide* purchaser for value and before maturity. Plaintiff prevailed; and defendants appeal from the order denying a new trial.

The note was given when defendants bought of the payee, W. W. Ehle, a fuel and transfer business including six draft horses. The defendants executed a chattel mortgage on the horses to secure the note, it representing part of the purchase price. The defense alleged that the payee of the note procured the same by fraud and false representation in the sale of the horses mentioned; denied that plaintiff was a *bona fide* holder before maturity; and averred that he had notice of the fraud. Whether there was fraud and false representation in the sale of the horses that cancelled the note, growing out of the transaction, was submitted to the jury, and no complaint is made of the manner thereof. The assignments of error relate wholly to the submission of the issue as to plaintiff being a good faith purchaser, for value, before maturity.

Plaintiff's suggestion of a presumption that the jury found in his favor on the issue of fraud, cannot be entertained, for if error inheres in the submission of the issue of plaintiff's being a *bona fide* holder defendants were necessarily prejudiced, unless it can be clearly demonstrated that the jury found no actionable fraud, or else that there was no evidence for defendants to submit on that issue. Neither can be done in this case, for there was no special verdict, and we have examined that part of the settled case not printed sufficiently to ascertain that the jury might well have found fraud and misrepresentation in the deal and substantial injury therefrom.

In order to determine the correctness and propriety of an instruction assigned as error, it is necessary to state some matters which the testimony either established or tended to prove. The payee of the note, Mr. Ehle, now dead, was a friend of plaintiff. When Ehle was an alderman in the city, plaintiff was street commissioner of the ward. Plaintiff very often visited Ehle's fuel and transfer business before he sold to defendants, and also the one afterwards started by him opposite, across the railroad tracks. Plaintiff frequently accom-

modated Ehle by signing or endorsing his notes. About a year after the transaction with defendants, Ehle brought an action against them for the possession of the horses for some violation of the conditions in the chattel mortgage. Defendants therein set up a defense of fraud inducing the sale. The trial of that action lasted three days and concluded on January 24, 1912, the verdict being in favor of these defendants. At that trial the note now in suit was received as an exhibit, and so marked. The record is very persuasive that it remained from that time on in the possession of the clerk of the court until the latter part of March following. The chattel mortgage securing this note was not assigned to plaintiff until June 10, 1912. Plaintiff admitted that he knew of the Ehle lawsuit a few days after it was tried. His testimony was very obscure as to dates, but nevertheless he maintained that he received this note on February 5, 1912. He is either mistaken as to this date, or else the other witnesses are that the note was then in the custody of the clerk of court. There is also some testimony to show that Ehle was still interested in the note in May, 1912. Plaintiff testified that he had signed a $900 note for, and with, Ehle which fell due February 3, 1912; that Ehle had not sufficient funds to meet it but obtained the amount lacking, namely, $500, from plaintiff, and in consideration turned over to plaintiff this note. He accounts for the ready money by saying he had it in the house except $150, which he borrowed from a neighbor, but is unable to tell whether this last amount was in check or cash. He knew nothing of the makers of this note, asked Ehle no questions about them or the property covered by the mortgage, and yet accepted this note indorsed "without recourse" by Ehle. Without requesting payment from defendants he gave the note for collection to the attorney who was present and took Ehle's acknowledgment at the assignment of the chattel mortgage in June, 1912. Neither plaintiff nor this attorney could give any definite time when the note was given to the attorney.

We think the cross-examination of plaintiff when considered in connection with the evidence and facts above alluded to made it a question for the jury, and not the court, whether $500 was paid by plaintiff in purchase of this note, or whether, as claimed

by defendants, the turning over of the note and assigning the mortgage was only colorable and a scheme to avoid the consequences of the former lawsuit to Ehle. Therefore error is well assigned on this instruction given: "Gentlemen of the jury, I instruct you that there is no testimony in this case to contradict the testimony of Mr. Cole to the effect that he paid $500 for this note to Mr. Ehle, so there was a good consideration for this note." It was for the jury to say upon this record whether plaintiff's testimony was contradicted.

Where there is *mala fides* in a transaction direct proof is scarcely ever available. Proven circumstances might be such that the jury have a perfect right to reject as untruthful a positive statement of a witness though not contradicted by any direct testimony, especially when the witness evinces evasiveness, lack of memory or ignorance on matters which the jury may well conclude to be within his knowledge. Klason v. Rieger, 22 Minn. 59; Brown v. Morrill, 45 Minn. 481, 48 N. W. 328; Hawkins v. Sauby, 48 Minn. 69, 50 N. W. 1015; Los v. Scherer, 90 Minn. 456, 97 N. W. 123; State v. Halverson, 103 Minn. 265, 114 N. W. 957, 14 L.R.A.(N.S.) 947, 123 Am. St. 326. The instruction also tended to advise the jury that plaintiff was protected as a *bona fide* holder. Whether a consideration was paid for the purchase of this note, and the note was then turned over to plaintiff had a vital bearing on the question of good faith and want of notice of a defense, for "want of notice may be inferred from the payment of a valuable consideration where the transaction occurs in the ordinary course of business and is free from suspicious circumstances." Plymouth Cordage Co. v. Seymour, 67 Minn. 311, 69 N. W. 1079. It may be noted also that if plaintiff became the owner after March 14, 1912, there was interest which on the face of the note was overdue and unpaid. And if Ehle at the time did not have possession of the note so that it was not then delivered to plaintiff, there could hardly be a contention that the latter was a good faith purchaser in the ordinary course of business. O'Mulcahy v. Holley, 28 Minn. 31, 8 N. W. 906; First Nat. Bank of St. Paul v. Commrs. of Scott County, 14 Minn. 59 (77), 100 Am. Dec. 194; First Nat. Bank of Waverly v. Forsyth, 67 Minn. 257, 69 N. W. 909, 64 Am. St. 415.

Error is also assigned upon the charge and refusal to charge with respect to the burden of proof as to plaintiff's *bona fides* and want of notice if the jury found fraud in the deal. Judging this issue as made by the pleadings and as submitted to the jury, it would seem that the charge should have been in line with the practice indicated in MacLaren v. Cochran, 44 Minn. 255, 46 N. W. 408; Bank of Montreal v. Richter, 55 Minn. 362, 57 N. W. 61; Park v. Winsor, 115 Minn. 256, 132 N. W. 264; Cochran v. Stein, 118 Minn. 323, 136 N. W. 1037, 41 L.R.A.(N.S.) 391, namely, that, if the defendants established that the transaction wherein the note was procured was induced by fraud and misrepresentation on the part of Ehle, the verdict should go for defendants, unless plaintiff by a fair preponderance of the evidence proved that he purchased the note in good faith, before maturity, for value, and without notice of the fraud. However we would scarcely feel justified upon this record in holding that reversible error is here made to appear. The evidence on the issue of fraud practiced on defendants, inducing the execution of the note, is not printed in the paper book. It may be this would show that defendants' defense against Ehle, had he held the note, was not the right to rescind for the fraud, but partook more of the nature of a breach of contract or of warranty in the sale of the horses so that the burden of proving notice would rest on the defendants within the decision of Merchants & M. S. Bank of Janesville v. Cross, 65 Minn. 154, 67 N. W. 1147; First Nat. Bank of Minneapolis v. McNairy, 122 Minn. 215, 142 N. W. 139, and First Nat. Bank of Wellington v. Person, 101 Minn. 30, 111 N. W. 730. On another trial we apprehend no difficulty will be experienced with the burden of proof nor with instructions relative to circumstantial evidence of *mala fides* in the purchase of negotiable paper, and therefore refrain from further comment on the errors assigned. For the erroneous instruction first discussed a new trial is rendered necessary.

Order reversed.