# STATE v. RICHARD H. MOHRBACHER.[1]

February 17, 1928.

No. 26,538.

**Denial of continuance proper.**

1. There was no error in refusing a continuance.

**Ample foundation for admission of defendant's handwriting.**

2. The foundation was ample for the introduction of samples of the handwriting of defendant, in a prosecution charging defendant with the forgery of the signature of a purported maker of a check, so as to permit them as standards of comparison with such signature.

**Refusal to exclude expert's testimony and to give instruction respecting handwriting.**

3. There was no error in refusing to exclude the testimony of the expert in handwriting, nor in denying a requested instruction that opinion evidence "is regarded as an inferior class of evidence."

**Exclusion of witness' opinion on handwriting.**

4. Whether a witness has qualified to express an opinion, as to whose is a disputed signature, is largely within the discretion of the trial court. There was no abuse of discretion in the exclusion of an opinion of a witness who had seen the signature of a person only once.

**New trial unnecessary.**

5. Certain defects in the charge not called to the court's attention at the time are not of a character to call for a new trial.

**Change of result unlikely from new evidence.**

6. The newly discovered evidence was not of a nature likely to change the result were a new trial had.

Criminal Law, 16 C. J. p. 489 n. 11; p. 621 n. 76; p. 749 n. 56; p. 750 n. 76, 77; p. 941 n. 55; p. 1206 n. 95; 17 C. J. p. 64 n. 3; p. 295 n. 63.

See note in L. R. A. 1918D, 642; 11 R. C. L. 622; 2 R. C. L. Supp. 1287; 4 R. C. L. Supp. 713.

[1]Reported in 218 N. W. 112.

Defendant appealed from a judgment of the district court for Carver county, Tifft, J. convicting him of forgery in the second degree. Affirmed.

*Francis Muekel*, for appellant.

*Albert F. Pratt*, Attorney General, *James E. Markham*, Deputy Attorney General, and *John J. Fahey*, County Attorney, for the state.

Holt, J.

Convicted of forgery in the second degree, defendant appeals from the judgment.

The instrument forged was a $25 check payable to the order of defendant and purporting to be signed by George O'Brien. The check was made and passed in June, 1926. The sheriff had the check in the fall and had a talk with defendant about it. The record shows that he was soon thereafter arrested, but whether on this charge or whether at liberty on bail does not appear. However, the information was filed March 14, 1927, and on March 21, when the case was called for trial, a local attorney appeared and requested a continuance until the attorney defendant had retained on the 19th of March, who was trying a case in the municipal court of Minneapolis, could be present. A continuance was granted until the 23rd, but the court insisted that a jury be at once impaneled. The jury was impaneled and excused till the 23rd, when defendant's present counsel, the one retained by him to try the case, appeared. No objection was then raised by him to the jury or to any member thereof, nor was any exception taken to the impaneling of the jury either on the 21st or the 23rd.

Error is assigned upon the refusal to grant a continuance. A continuance is largely within the discretion of the trial court, and there is nothing in the showing that George O'Brien, the one claimed by defendant to have signed the check, could be found or produced at the trial were a continuance had. Nor any excuse for not having learned all about him, after defendant some five months before knew that the authorities were trying to fasten responsibility upon defendant for the check. There was no abuse of judicial discretion in proceeding with the trial on the 23rd of March.

The first proposition is whether the alleged forged check and exhibits B and C were sufficiently proved to be the handwriting of defendant, so that the jury and experts might use the same by way of comparison to determine if he also wrote "George O'Brien, 1410 2nd Ave. So." upon the check as purported maker thereof. In State v. Lucken, 129 Minn. 402, 152 N. W. 769, a forgery prosecution, we held that where a defendant offers samples of his ordinary handwriting as standards of comparison, the genuineness of such samples, unless conceded, must be established by clear and satisfactory proof, and that the trial court's ruling whether such proof has or has not been adduced will be reversed only when palpably erroneous. The degree of proof required of the prosecution may not be less. The genuineness of defendant's signature indorsed on exhibit C was proved by the testimony of Harms who saw defendant sign the instrument. Exhibit B was a letter purporting to be written by defendant. Mr. Bell, who had operated the State Bank at Cologne for over 20 years and at whose bank defendant had done business, testified that he knew defendant's handwriting and positively identified exhibit B as his. He was equally positive as to the check, including the signature George O'Brien, being written by defendant. We think the foundation for the introduction of samples of defendant's handwriting for comparison with the purported signature of George O'Brien upon the check was sufficient, and under the rule above given there was no reversible error in the ruling. That the rule as applied in this case did in no manner harm defendant is evident from the fact that when he took the witness stand he conceded that he wrote the body of the check with a lead pencil. He also admitted that he wrote exhibit B.

That the expert in handwriting who testified for the state professed to be infallible in his conclusions would not warrant the court in striking out his testimony nor in instructing the jury that opinion evidence "is regarded as an inferior class of evidence" as requested by defendant. The expert had also made a chart illustrating the similarity of the strokes and curves of the pen as found in the three exhibits mentioned. The particular objection to the re-

ception of this chart, exhibit E, is that the expert had written thereon in connection with the letters traced from the sample writings "Admitted." But it so clearly appeared that this designation was merely for use in the chart and not intended as evidence in the case that it should not be held of any significance. Furthermore, if defendant apprehended any prejudice from this marking upon the chart, it readily could have been erased had defendant so requested before it was offered or used. Irrespective of the value of the chart to the jury, it was permissible for the witness to use it in explaining how, from the comparison of the writings and the letters thereof, he arrived at the conclusion that defendant wrote the words "George O'Brien" on the check.

Complaint is made because a witness who had once received a check from George O'Brien which proved worthless and who compelled the maker thereof to pay it was not permitted to give his opinion as to whether or not this alleged forged check was signed by the same O'Brien. The witness did not testify that he was familiar with the writing of O'Brien, and had seen only that one check signed by him. Within the rule of the case cited, and within Morrison v. Porter, 35 Minn. 425, 29 N. W. 54, 59 Am. R. 331; Berg v. Peterson, 49 Minn. 420, 52 N. W. 37; or Cochran v. Stein, 118 Minn. 323, 136 N. W. 1037, 41 L.R.A. (N.S.) 391; James v. Warter, 156 Minn. 247, 194 N. W. 754; C. Gotzian & Co. v. Truszinski, 169 Minn. 199, 210 N. W. 880, we cannot hold that the court erred in the ruling, for, as said in Cochran v. Stein, 118 Minn. 323, 136 N. W. 1037, 41 L.R.A. (N.S.) 391, the competency of an expert to express an opinion as to whose handwriting a particular signature is rests largely within the discretion of the trial court—that is, in this instance, whether this witness retained enough of the mental picture of the signature of George O'Brien upon the worthless check he received from him to be able to testify that George O'Brien also signed the check defendant is charged with having forged was for the trial court to decide.

The charge is also taken exception to. It is not as clear as might be desired concerning circumstantial evidence. The expression "reasonable inference" was legally inaccurate, but defendant's

counsel at the time saw nothing misleading therein, and no request for any modification in this respect was made before the jury retired. İt should also be said that the expression referred to was followed by this: "Provided, of course, that such circumstance, with all the evidence in the case, convinces you beyond a reasonable doubt of the guilt of the accused." There were some general remarks that sympathy should not influence the verdict, wherein this occurs: "We all have sympathy for anybody that is in trouble. We have sympathy for his folks, for people are not to blame as a rule because the young man went wrong. Speaking generally, parents try to do the right thing by their children." It is claimed that the court by the language expressed the conviction that defendant was guilty. No doubt the court intended the remarks to apply to prosecutions generally, and not to this particular defendant; but it must be admitted that the words were not well chosen. However, at the time defendant's counsel did not think that the court singled out his client as "the young man [who] went wrong," for there was no exception then taken or request to modify the language used.

Newly discovered evidence was urged as grounds for a new trial. Upon the check the residence of the purported maker was given as "1410 2nd Ave. So." The man and wife who operate that place and a nearby house were witnesses for the state and testified that no man by the name of George O'Brien had occupied rooms there. In their affidavits produced on the motion for a new trial they state that when they heard afterwards during the trial the description of George O'Brien as given by defendant and others it "tallied exactly" with the appearance of one who under another name rented a room of affiants. The record indicates that defendant and this O'Brien, whatever his name, had had illicit dealings in intoxicating liquor. Defendant claims he had seen, and talked with him after defendant knew the check was dishonored and within two or three months after the check had been passed, so there was no lack of time or opportunity before the trial to ascertain the whereabouts of O'Brien or any desired and available testimony in regard to him. The record fails to show that defendant after learning that he obtained value for a worthless check took any steps to redress the

wrong or bring to justice one whom he now accuses of wrongdoing. Under the showing made and the improbability that a new trial would produce evidence that would bring about a different result we find no error in the denial of a new trial upon the proposed newly discovered evidence.

The judgment is affirmed.