## STATE v. O. V. HOUSTON.

153 N. W. (2d) 267.

September 8, 1967—No. 40,408.

*C. Paul Jones,* State Public Defender, and *Murray L. Galinson,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

OTIS, JUSTICE.

Defendant has been tried and found guilty of aggravated forgery in violation of Minn. St. 609.625, subd. 3, which provides:

"Whoever, with intent to defraud, utters or possesses with intent to utter any forged writing or object mentioned in subdivision 1, knowing it to have been so forged, may be sentenced as provided in subdivision 1."

He appeals from the conviction. The issues are, *first,* whether a jury is competent without expert testimony to decide whether a signature is forged; and, *second,* whether the court committed error in suggesting to counsel outside the hearing of the jury that a genuine signature be introduced for comparison with that alleged to be forged.

The testimony permitted the jury to find that on October 1, 1965, defendant appeared at the Lincoln Branch of the Northwestern National Bank in Minneapolis and presented for payment the check here in question. It was drawn on the welfare fund of the Hennepin County Treasurer, designated as "AID TO FAMILIES WITH DEPENDENT CHILDREN," and was made payable to Beverly Crawford in the sum of $255.65. At the time it was presented it had been endorsed with a signature which read "Beverly Craword," omitting the letter "f." Defendant advised the cashier that he was Beverly Crawford's husband, James. She referred him to an assistant manager who called the Hennepin County Welfare Board. Thereupon defendant was detained by a bank guard who summoned the Minneapolis police. Defendant then claimed that the payee of the check was his sister. After being taken into custody, he admitted his true identity but persisted in claiming that the payee, Beverly Crawford, had endorsed the check and requested him to cash it. Mrs. Crawford testified that defendant was a stranger to her; that she did not find the check in her mailbox the morning it was due and called the Welfare Department to determine why she hadn't received it. She and her landlady both testified they had seen defendant on the porch of Mrs. Crawford's residence at about the time the mail was delivered. It was the theory of the state that defendant had extracted the check from the mailbox and forged the endorsement.

The state rested without introducing expert testimony to establish that the endorsement was forged and without offering Mrs. Crawford's genuine signature for comparison. Counsel was then called into chambers by the court who stated with some hesitation that in the interest of justice he wished to suggest that the state offer Mrs. Crawford's genuine signature for comparison by the jury, lest such evidence may have been inadvertently overlooked. The court observed that this evidence might inure to the benefit of the defendant if the signatures were quite similar, but left it entirely to the prosecutor as to whether or not he wished to proceed in this manner. The defendant strenuously objected to the introduction of a genuine facsimile of Mrs. Crawford's signature on the ground the jury was not competent to assume the role of an expert. The prosecutor thereupon secured from Mrs. Crawford a sample of her signature, and over defendant's objection it was offered and received in evidence.

■ In our previous decisions we have not reached the question of whether a jury is qualified to pass on the genuineness of a signature. Our decisions have centered largely on the propriety of experts comparing signatures which are already in evidence. Morrison v. Porter, 35 Minn. 425, 29 N. W. 54; Cochran v. Stein, 118 Minn. 323, 136 N. W. 1037, 41 L. R. A. (N. S.) 391; State v. Lucken, 129 Minn. 402, 407, 152 N. W. 769, 771; State v. Mohrbacher, 173 Minn. 567, 571, 218 N. W. 112, 114. We do not now suggest that a lay witness may, without proper qualifications, testify on the question of forgery. All that is before us is whether a factfinder, be it court or jury, may decide that issue without the benefit of expert testimony. We now hold that it may.[1]

Defendant relies for reversal on Clark v. State (Fla. App.) 114 So. (2d) 197, 80 A. L. R. (2d) 261. The Florida court there held that its statute authorizing comparison of a disputed writing with a genuine writing was not in derogation of the common-law rule which forbids the jury to pass on the issue of forgery without the aid of experts. The court there concluded (114 So. [2d] 203, 80 A. L. R. [2d] 268):

---

[1] See, Wigmore, Evidence (3 ed.) § 2016; Inbau, *Lay Witness Identification of Handwriting*, 34 Ill. L. Rev. 433.

"* * * To allow a jury to assume the role of expert or skilled practitioners in the field of handwriting with no guide or format from which to base a considered opinion, is placing upon them a responsibility that transcends the average experience and common knowledge of a juryman."

We do not concur in the conclusion reached by the Florida court but prefer to adopt the contrary rule applied in W. T. Carter & Bro. v. Rhoden (Tex. Civ. App.) 72 S. W. (2d) 620, 622, 623; Schertzinger v. Williams, 198 Cal. App. (2d) 242, 245, 17 Cal. Rptr. 719, 721; Commonwealth v. McClary, 199 Pa. Super. 215, 217, 184 A. (2d) 364; Strauss v. United States (5 Cir.) 311 F. (2d) 926, 932.

Whatever may have been the experience and competence of common-law jurors to assess the genuineness of signatures, we are of the opinion that this aptitude is one which today most laymen have been obliged to develop in conducting their own affairs. With the widespread use of credit cards and travelers' checks, merchants and others in the field of commerce are frequently confronted with the necessity of comparing signatures. In the light of this common experience and exposure, we hold that a factfinder may, in the discretion of the court, be permitted to resolve the issue of forgery without expert assistance. Under our law it is not incumbent on jurors to accept an expert's opinion blindly. They must come to their conclusion on the basis of their own observations and experience and assessment of all the evidence before them. Backman v. Fitch, 272 Minn. 143, 155, 137 N. W. (2d) 574, 582.

■ Defendant asserts that it was reversible error for the trial court to suggest sua sponte the production of Mrs. Crawford's genuine signature, citing United States v. Carengella (7 Cir.) 198 F. (2d) 3, 8, where the court stated:

"* * * But it is no part of the judge's duty to caution or advise the prosecuting attorney in order to supply some deficiency in the proof or testimony favorable to the government."

We agree that it is not the function of the court to advocate the cause of either the state or the defendant. However, where evidence as crucial as

that to which the court here alluded is readily available and may be as beneficial to defendant as to the state, we see no impropriety in the court's calling to the attention of either party what might well have been an oversight. The court was neither offering its own witness nor insisting that the missing evidence be produced. It was merely inquiring as to the availability of the evidence and the reason for its omission. We hold that under these circumstances it is not only the prerogative of the court but may well be its duty to discuss the matter with counsel, if it is done outside the hearing of the jury. People v. Franceschini, 20 Ill. (2d) 126, 131, 169 N. E. (2d) 244, 247.

Affirmed.