## STATE v. GEORGE A. BORST.

154 N. W. (2d) 888.

December 1, 1967—No. 40,967.

*Michael D. Weinberg,* Minnesota Affiliate American Civil Liberties Union, for relator.

*Douglas M. Head,* Attorney General, and *Gerard W. Snell,* Solicitor General, for respondent.

*Keith M. Stidd,* City Attorney, and *Curtis H. Foster,* Assistant City Attorney, for city of Minneapolis, amicus curiae.

*James J. O'Connor,* for Minnesota County Attorneys Association, amicus curiae.

KNUTSON, CHIEF JUSTICE.

Defendant Borst was a candidate for sheriff of Hubbard County in the November 1966 election. During the course of the campaign he issued a circular regarding the qualifications of the incumbent sheriff, who was his opponent. He was charged with unlawfully and knowingly publishing a false statement in regard to a candidate to be voted upon, contrary to Minn. St. 211.08. A violation of this statute is a misdemeanor. He was arraigned in municipal court in Hubbard County on November 9, 1966, and granted a continuance at that time in order to retain counsel. On November 21 he appeared without counsel, alleging

that he was financially unable to procure counsel, and requested the court to appoint counsel for him. The court informed him that counsel could not be appointed for him, and when he refused to plead to the charge, the judge entered a plea of not guilty in his behalf and set his trial for November 30. On November 30 Borst appeared pro se. He offered no testimony, introduced no exhibits, made no statements, and conducted no cross-examination. The court found him guilty and sentenced him to a fine of $100 or, in default of payment, to imprisonment in the Hubbard County Jail for 30 days. He paid the fine under protest. Thereafter he filed a notice of appeal to the Hubbard County District Court.[1] He applied to the district court for appointment of counsel, which was denied. He then petitioned this court for an alternative writ of mandamus, seeking to compel the district court to appoint counsel in his behalf. We issued our alternative writ, returnable August 14, and in view of the importance of the question, set the case for oral argument.

The question presented here is whether defendant is entitled to have counsel appointed for him in a misdemeanor case, assuming that he is financially unable to procure counsel in his own behalf.

The trial court found that Borst was not indigent. We have examined the record, and since there is some doubt about the validity of this finding, we will assume for the purpose of deciding the main issue that Borst is unable to procure counsel in his own behalf.

The question is a troublesome one and has caused much difficulty throughout the country. The Supreme Court of the United States on three recent occasions has declined to review cases involving this question. In Winters v. Beck, 385 U. S. 907, 87 S. Ct. 207, 17 L. ed. (2d) 137, the court denied certiorari which sought to review a decision of the Supreme Court of Arkansas, Winters v. Beck, 239 Ark. 1151, 397 S. W. (2d) 364, holding there was no duty imposed on the courts to appoint counsel in misdemeanor cases. In Cortinez v. Flournoy, 385 U. S. 925, 87 S. Ct. 314, 17 L. ed. (2d) 222, the court declined to

---

[1] A defendant so convicted may appeal even though a fine is paid. Minn. St. 633.20. The trial in district court on an appeal such as this is de novo.

review a decision of the Louisiana court; and in DeJoseph v. Connecticut, 385 U. S. 982, 87 S. Ct. 526, 17 L. ed. (2d) 443, the court denied certiorari in a case decided by the Circuit Court of Connecticut, Appellate Division, State v. DeJoseph, 3 Conn. Cir. 624, 222 A. (2d) 752. In two of these cases, two members of the court and in one case three members, were of the opinion that certiorari should be granted and the question settled due to the divergence of decisions in various jurisdictions. In Winters v. Beck, Mr. Justice Stewart said (385 U. S. 908, 87 S. Ct. 208, 17 L. ed. [2d] 138):

"This decision of the Supreme Court of Arkansas is in conflict with decisions of the United States Court of Appeals for the Fifth Circuit, which has held that indigent defendants have a constitutional right to counsel in misdemeanor cases * * *. This conflict must be resolved, unless the Constitution of the United States is going to mean one thing in Arkansas and something else in Mississippi."

In the DeJoseph case the Circuit Court of Connecticut, Appellate Division, held that appointment of counsel need not necessarily be furnished in misdemeanor cases and whether it should be rested in the sound discretion of the trial court. State v. DeJoseph, *supra*. This holding was squarely opposite to the decision of the Federal District Court for the District of Connecticut, Arbo v. Hegstrom, 261 F. Supp. 397. Under Connecticut law, defendant could be sentenced up to 1 year in jail for a misdemeanor. In the DeJoseph case a sentence of 6 months was imposed. In the Arbo case, involving nine violations of the same statute, the Federal District Court said (261 F. Supp. 401):

"* * * It would be a gross perversion of solid constitutional doctrine to find a rational distinction between one year in jail (a misdemeanor) and one year and a day in prison (a felony)."

Other courts that have passed upon this issue have come to inconsistent conclusions. In some cases decisions are based on the fact that no provision is made for appointing counsel in a misdemeanor prosecution as such. In other cases, the courts seem to base decision on the seriousness of the offense; and in still other cases they hold that a misdemeanor is entitled to counsel regardless of the nature of the crime. In the absence

of a definitive decision by the ultimate authority on the meaning of our Federal Constitution, state courts will have to resolve the matter in the light of their own experience and as they may apply their own constitutions and statutes. An examination of the cases that have passed on the question may be of some help.

At the outset, we are convinced that the right to counsel cannot logically be based on the name given to a crime. The definition of "misdemeanor" varies from state to state and under Federal law, as does the sentence that may be imposed. Under our statute, Minn. St. 609.02, subd. 1, a crime is defined thus:

" 'Crime' means conduct which is prohibited by statute and for which the actor may be sentenced to imprisonment or fine or both."

Subd. 2 defines felony:

" 'Felony' means a crime for which a sentence of imprisonment for more than one year may be imposed."

Subd. 3 defines misdemeanor:

" 'Misdemeanor' means a crime for which a sentence of not more than 90 days or a fine of not more than $100 may be imposed."

Subd. 4 defines gross misdemeanor:

" 'Gross misdemeanor' means any crime which is not a felony or misdemeanor."

A gross misdemeanor is punishable by imprisonment for not more than a year or the payment of a fine of not more than $1,000, or both. § 609.03(2).

Section 611.07, subd. 1, provides that counsel may be appointed for an indigent defendant charged with a felony or gross misdemeanor. Subd. 2 provides for payment of their fees, if such counsel appeal, in cases involving felonies or gross misdemeanors. Our Public Defender Act, Minn. St. 611.14 to 611.29, adopted in 1965, provides that the public defender may represent an indigent person charged with a felony or gross misdemeanor and similarly may represent such defendant on appeal or in a postconviction proceeding.

There are two statutory provisions originally intended to provide a

public defender in Hennepin and Ramsey Counties. Section 611.12 applies to counties "now or hereafter" having a population of 300,000 or more. It was originally intended to apply to Hennepin County.[2] Section 611.13, which by its title applies to Ramsey County, covers counties "now or hereafter" having a population of more than 240,000 and less than 500,000. At the time these statutory provisions were enacted, § 611.13 could apply only to Ramsey County and § 611.12 could apply only to Hennepin County. However, by virtue of growth of population Ramsey County now comes within the provisions of both sections so we assume that it may follow the provisions of either. For the purposes of this opinion, we simply wish to indicate that under both statutes the public defender may be appointed to represent persons charged with a felony or gross misdemeanor. None of the statutory provisions provide for appointment of a public defender to represent a defendant charged with a, misdemeanor.

Any consideration of this question today must start with Gideon v. Wainwright, 372 U. S. 335, 344, 83 S. Ct. 792, 796, 9 L. ed. (2d) 799, 805. There the court said:

"* * * [R]eason and reflection require us to recognize that * * * any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."

From the language of Gideon it would seem that the right to counsel extends to prosecutions for any crime regardless of whether it is a misdemeanor, gross misdemeanor, or felony. But the court's reluctance to review cases involving misdemeanors casts much doubt on the meaning of Gideon and how far its mandate extends.

The case of In re Gault, 387 U. S. 1, 87 S. Ct. 1428, 18 L. ed. (2d) 527, involved the application of due process to a juvenile charged with being a delinquent. In holding that due process would apply to such cases, the court made some significant statements with respect to the right of counsel which may or may not cast some light upon Gideon. Among other things, the court said (387 U. S. 29, 87 S. Ct. 1444, 18 L. ed. [2d] 547):

---

[2] See, Minn. St. 1961, § 611.12.

"* * * He [the juvenile] would be entitled to clear advice that he could be represented by counsel, and, *at least if a felony were involved,* the State would be required to provide counsel if his parents were, unable to afford it." (Italics supplied.)

Then again the court said (387 U. S. 42, 87 S. Ct. 1451, 18 L. ed. [2d] 554):

"* * * They [the parents] had a right expressly to be advised that they might retain counsel and to be confronted with the need for specific consideration of whether they did or did not choose to waive the right. If they were unable to afford to employ counsel, they were entitled, *in view of the seriousness of the charge and the potential commitment,* to appointed counsel, unless they chose waiver." (Italics supplied.)

Does this language mean that Gideon extends only to felonies or to cases involving so-called serious charges? And if so, where do we draw the line in defining what is a serious charge? The case still leaves us in a quandary as to what is required by Gideon.

The case of Patterson v. State, 227 Md. 194, 175 A. (2d) 746 (December 8, 1961), was decided prior to Gideon by the Maryland court and is indicative of the fact that simply calling a crime a "misdemeanor" does not remove it from the orbit of Gideon. In that case the Maryland court held that there was no constitutional right to assigned counsel in misdemeanor cases. Defendant was convicted of carrying a concealed weapon, a misdemeanor under Maryland law, punishable by up to two years in prison. Gideon was decided March 18, 1963. When the Patterson case reached the United States Supreme Court, it granted certiorari and remanded for further consideration in light of Gideon. Patterson v. Warden, 372 U. S. 776, 83 S. Ct. 1103, 10 L. ed. (2d) 137. The Maryland court thereafter reversed the conviction and remanded the case for a new trial and further proceedings in conformity with Gideon. Patterson v. State, 231 Md. 509, 191 A. (2d) 237. It does not appear what happened to the case thereafter, but it is a reasonable assumption that the court must have appointed counsel on the theory that Gideon required it. The decision of the Supreme Court of the United States in this case, while not conclusive, probably comes as close as any to holding

that merely calling an offense a misdemeanor does not remove it from the orbit of Gideon.

Other state and Federal decisions give us little help as to the proper application of Gideon. We have already discussed Winters v. Beck, *supra;* Arbo v. Hegstrom, *supra;* and DeJoseph v. Connecticut, *supra.* State v. Thomas, 249 La. 742, 190 So. (2d) 909, holds squarely that Gideon does not apply to misdemeanor cases. There is no discussion of the question. Most of the state and Federal cases that have attempted to discuss the subject have based their decisions on some sort of "serious offense" rule. Thus, in State v. Anderson, 96 Ariz. 123, 131, 392 P. (2d) 784, 790, we find the Arizona court saying:

"In view of the Patterson cases, we believe that Gideon requires state courts to appoint counsel for indigents accused of a misdemeanor which falls in the category of a 'serious offense' and we so hold. The superior court must determine whether the misdemeanor charged is a 'serious offense' under the particular circumstances. Some of the factors to be considered in making this determination are the nature of the offense, the extent of the potential penalty, and the complexity of the case. The fact that the maximum potential penalty in the instant case is a fine not exceeding one thousand dollars and imprisonment in the county jail for not to exceed two years is sufficient to warrant placing this crime in the 'serious' category."

Even among courts attempting to draw the line at "serious offenses," there is no unanimity as to what is a "serious offense." Thus, in DeJoseph, a 6-month sentence was not considered serious. In People v. Letterio, 16 N. Y. (2d) 307, 266 N. Y. S. (2d) 368, 213 N. E. (2d) 670, the court held defendants were not entitled to assigned counsel in traffic cases. But in People v. Witenski, 15 N. Y. (2d) 392, 259 N. Y. S. (2d) 413, 207 N. E. (2d) 358, the Court of Appeals, in a case where defendants stole apples worth about $2 and were sentenced to 30 days in jail, held they were entitled to counsel. The court there drew no distinction between petty and serious offenses.

Other courts have refused to follow the "serious offense" rule. Among them are People v. Mallory, 378 Mich. 538, 147 N. W. (2d) 66; Evans

v. Rives, 75 App. D. C. 242, 126 F. (2d) 633; Harvey v. State of Mississippi (5 Cir.) 340 F. (2d) 263; McDonald v. Moore (5 Cir.) 353 F. (2d) 106; [3] Petition of Thomas (W. D. La.) 261 F. Supp. 263. See, also, State ex rel. Barth v. Burke, 24 Wis. (2d) 82, 128 N. W. (2d) 422; In re Johnson, 62 Cal. (2d) 325, 42 Cal. Rptr. 228, 398 P. (2d) 420; State v. Blank, 241 Ore. 627, 405 P. (2d) 373; [4] City of Tacoma v. Heater, 67 Wash. (2d) 733, 409 P. (2d) 867. In this case the court apparently construed Gideon as extending to misdemeanors. It said (67 Wash. [2d] 736, 409 P. [2d] 869):

"* * * [T]he *Gideon* case * * * means that every defendant has a constitutional right to counsel in all criminal prosecutions. The court made no distinction between misdemeanors and felonies insofar as the applicability of this provision is concerned."

In the pre-Gideon case of Bolkovac v. State, 229 Ind. 294, 299, 98 N. E. (2d) 250, 252, the Indiana court held that under its state constitution one accused of a misdemeanor was entitled to counsel, stating, with respect to the language of its constitution:

"* * * The language of the section, 'In all criminal prosecutions,' includes prosecutions for misdemeanors."

In the case of City of Toledo v. Frazier, 10 Ohio App. (2d) 51, 226

---

[3] The court did add the following by way of dicta (353 F. [2d] 108): "It seems unlikely that a person in a municipal court charged with being drunk and disorderly, would be entitled to the services of an attorney at the expense of the state or the municipality. Still less likely is it that a person given a ticket for a traffic violation would have the right to counsel at the expense of the state. If the Constitution requires that counsel be provided in such cases it would seem that in many urban areas there would be a requirement for more lawyers than could be made available."

[4] The court in that case said (241 Ore. 628, 405 P. [2d] 374): "A defendant has a constitutional right to be represented by counsel, and an indigent defendant has a right to have counsel appointed by the court. The state is willing to concede that the appointment of counsel is required in the case of a misdemeanor. For purposes of this case we will assume that this is correct." The court went no further than to indulge in this assumption.

N. E. (2d) 777, the Ohio Court of Appeals, after reviewing a substantial number of the cases on the subject, came to the conclusion that until a mandate comes from the Supreme Court of the United States it was not mandatory under the Ohio constitution to furnish counsel at public expense to indigent defendants charged with misdemeanors.

Thus, it is quite clear that we can obtain no definite rule from the cases that have considered this question. There is no unanimity either in classification of cases as misdemeanors or in the conclusions that have been reached or the reasons for such conclusions. In this state, as in many others, our state constitution makes no distinction between misdemeanors, gross misdemeanors, and felonies. It simply provides that "[i]n all criminal prosecutions the accused shall enjoy the right * * * to have the assistance of counsel in his defense." Minn. Const. art. 1, § 6. Nor do our statutes draw such a distinction so far as the right to counsel is concerned. Section 630.10 provides:

"If the defendant shall appear for arraignment without counsel, he shall be informed by the court that it is his right to have counsel before being arraigned, and shall be asked if he desires the aid of counsel."

In State v. Moosbrugger, 263 Minn. 56, 116 N. W. (2d) 68, we held that § 630.10 applies to all criminal prosecutions except prosecutions for violation of municipal ordinances and that a misdemeanor must be informed of his right to counsel under this statute. A note in 47 Minn. L. Rev. 281, 285, discussing the Moosbrugger case, points out that it is anomalous that a misdemeanant must be advised of his right to counsel but that the court may not appoint counsel if he is unable to retain one himself.

In State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785, we said that our constitution provides that in all criminal prosecutions the accused shall enjoy the right to assistance of counsel in his defense.

Finally, in State v. Paulick, 277 Minn. 140, 150, 151 N. W. (2d) 591, 598, in dealing with the issuance of warrants for arrests, we said:

"The conclusion is inescapable that under the State and Federal Constitutions we can no longer draw a rational distinction between arrests

made for misdemeanors and those made for felonies. The impact on the individual is merely a matter of degree."

Thus it is that, rationalize as we will, it is simply impossible to draw a distinction between the right to counsel in misdemeanor, gross misdemeanor, and felony cases merely because they are called by different names. A defendant convicted of a misdemeanor may be sentenced to 90 days in jail; conviction of a gross misdemeanor may conceivably lead to a jail sentence of less than 90 days, or only a fine; and still our statutes require that the court provide counsel for an indigent defendant charged with a gross misdemeanor and are silent as to appointing counsel for one charged with a misdemeanor. A defendant in court on a charge defined as a misdemeanor is as helpless to defend himself as he would be if he were charged with a gross misdemeanor or felony. While a misdemeanor under our laws, drawing a sentence which may not exceed 90 days in jail, might be considered a petty offense by many of the cases mentioned above, it nonetheless is a deprivation of liberty which, to an innocent person convicted because he is unable to properly defend himself, is of considerable consequence. If that be true, anyone accused of a misdemeanor who is unable to obtain facilities so that he can properly defend himself should be furnished such facilities, at least if he is apt to be deprived of his liberty.

Until we have a definitive decision by the Supreme Court of the United States as to whether Gideon requires appointment of counsel for an indigent charged with a misdemeanor as defined by our laws, as a Sixth-Amendment right, we choose not to guess at what it may eventually hold by basing our decision on the Federal Constitution or even on our state constitution. In the exercise of our supervisory power to insure the fair administration of justice, we decide that counsel should be provided in any case, whether it be a misdemeanor or not, which may lead to incarceration in a penal institution. In other words, if the court is to impose a jail sentence, counsel should be furnished. We leave for future determination the question of whether counsel must be furnished where only a fine is to be imposed.

We are not unmindful of Minn. St. 574.35, which provides in part:

"* * * [I]n all cases of the imposition of a fine pursuant to statute, as punishment for any offense, the offender may be committed until the same is paid or he is otherwise discharged according to law."

If this provision of the statute is to be invoked and the defendant incarcerated for failure to pay a fine, the rule laid down in this case will apply. In any prosecution for a misdemeanor where an indigent defendant has been convicted after being denied counsel, the court shall not hereafter impose sentence of confinement in a penal institution, whether or not it is suspended or contingent on failure to pay the fine.

Some attempt has been made to equate the right to counsel with the right to a jury trial. At first blush it would seem that as far as Federal constitutional rights are concerned, decisions holding that it is not necessary to have a jury trial in all cases are controlling because both are derived from the Sixth Amendment as applied to the states by the Fourteenth Amendment. In several cases it has been held that the right to a jury trial does not exist in all so-called minor offenses. In District of Columbia v. Clawans, 300 U. S. 617, 57 S. Ct. 660, 81 L. ed. 843, for instance, the court, in a rather exhaustive opinion, concludes that it is not constitutionally necessary to have a jury trial in cases dealing with so-called petty offenses. See, also, District of Columbia v. Colts, 282 U. S. 63, 51 S. Ct. 52, 75 L. ed. 177; Green v. United States, 356 U. S. 165, 78 S. Ct. 632, 2 L. ed. (2d) 672; Cheff v. Schnackenberg, 384 U. S. 373, 86 S. Ct. 1523, 16 L. ed. (2d) 629, holding that right to a jury trial does not extend to criminal contempt proceedings.

But even though the two rights derive from the same provisions of our Federal Constitution, they are not of equal significance when it comes to the matter of obtaining a fair trial. It is conceivable that a fair trial may be had before an impartial judge without a jury, but it is hardly conceivable that a person ignorant in the field of law can adequately defend himself without the assistance of counsel. Consequently, we do not consider the cases involving the right to a jury trial controlling in this area.

The arguments most frequently advanced in support of denial of appointed counsel in misdemeanor cases are that it will cost too much and

that there are so many of these cases that there are insufficient attorneys to represent all misdemeanants.

We are persuaded that the possible loss of liberty by an innocent person charged with a misdemeanor, who does not know how to defend himself, is too sacred a right to be sacrificed on the altar of expedience. Any society that can afford a professional prosecutor to prosecute this type of crime must assume the burden of providing adequate defense, to the end that innocent people will not be convicted without having facilities available to properly present a defense.

As to the latter contention, it may be that our public defender system, which now operates throughout most of the state, may have to be extended to handle this type of case.

In any event, neither of these arguments is sufficiently persuasive to deny an accused person, who may wind up in jail because he doesn't know how to defend himself, the proper tools with which to present what defense he may have.

It is clear that there is no magic in the designation of a crime as a misdemeanor, gross misdemeanor, or felony. We must look to the consequences of conviction of crime rather than the classification. The impact on an accused who suffers loss of liberty by incarceration in a penal institution is the same no matter how the crime of which he was convicted was classified.

The rule we adopt follows substantially the recommendations of a report by the President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society*. The commission recommends the following (p. 150):

"The objective to be met as quickly as possible is to provide counsel to every criminal defendant who faces a significant penalty, if he cannot afford to provide counsel himself. This should apply to cases classified as misdemeanors as well as to those classified as felonies. Counsel should be provided early in the proceedings and certainly no later than the first judicial appearance. The services of counsel should be available after conviction through appeal, and in collateral attack proceedings when the issues are not frivolous. The immediate minimum, until it becomes

possible to provide the foregoing, is that all criminal defendants who are in danger of substantial loss of liberty shall be provided with counsel."

The American Bar Association's project on minimum standards for criminal justice in its Tentative Draft, Standards Relating to Providing Defense Services, proposes the following as a minimum standard (p. 37):

"Counsel should be provided in all criminal proceedings for offenses punishable by loss of liberty, except those types of offense for which punishment is not likely to be imposed, regardless of their denomination as felonies, misdemeanors or otherwise."

The trial court in addition to concluding that defendant was not entitled to appointed counsel even if an indigent, found that he had failed to properly make a showing of indigence. We are of the opinion that the court did not go into that matter in depth, believing as it did that a defendant in a misdemeanor case was not entitled to appointed counsel at public expense. The case is therefore remanded to the trial court for further proceedings not inconsistent with this opinion and with directions to afford defendant an opportunity to present more detailed evidence as to his financial inability to procure counsel. If after such hearing the court concludes that defendant is unable financially to procure counsel, the court shall appoint counsel.

We realize the practical difficulties of applying the rule we announce here. There is no statutory provision for compensating appointed counsel in misdemeanor cases. However, such services must be procured, and until the legislature can meet and make such provision for compensation, or extend the public defender system so that these cases are handled through its offices, it may be possible that counsel can be procured without great expense.

Ordinarily it would be more difficult to prove indigence in case of a misdemeanor because we think it is general knowledge that attorneys will handle misdemeanor cases for much less compensation than a felony or gross misdemeanor case. It may develop that in many of such cases the defendant does have sufficient property to procure his own counsel, where he would not have if the case were a felony or gross misdemeanor.

For the proper test of indigence, see State ex rel. Riendeau v. Tahash, 276 Minn. 26, 148 N. W. (2d) 557.

This opinion shall have prospective effect only, except as to the cases now before us.

Remanded.

PETERSON, JUSTICE (concurring specially).

A basic concern of this court must be to strive for greater fairness in the administration of criminal justice. The ultimate concern is to protect the innocent from wrongful conviction, a concern for the poor as much as for the affluent. A correlative consideration, nevertheless, must be to protect society from burdens that, if intolerable, might impair the administration of justice. Achieving the right balance between these competing considerations inherently requires that lines be drawn, a pragmatism that seldom achieves an ideal result.

The court has decided that the line should not be permanently drawn to exclude all misdemeanors from the class of offenses for which counsel should be provided to the indigent accused, and with this I concur. The majority, however, would include *any* offense statutorily defined as a misdemeanor if confinement in jail or prison is the direct or even alternative result,[1] but with this I disagree.

I would draw a different line for now and exclude from the operation of the rule any violations of highway traffic regulation statutes and those cases of violations of the criminal code constituting misdemeanors where incarceration is only the alternative punishment upon failure to pay the fine or to comply with other conditions imposed by the court.

The line which I propose is an empirical one, with no pretense that it is logically unassailable. There is much that could be said for a legislative

---

[1] The majority, in fact, expressly leave open at least the possibility that today's rule may later be altered to require counsel for indigents even where only a fine is imposed. Such extension might logically be required if the requirement of counsel is ever squarely based on Fourteenth Amendment rights, for that constitutional mandate provides that no state shall "deprive any person of life, liberty, *or property* without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." (Italics supplied.)

reclassification of misdemeanors to distinguish "petty" from "serious" misdemeanors for purposes of furnishing counsel, but for now I think the line to which I would subscribe has the present virtue of greater certainty. The element of incarceration is the key to the rule proposed by the majority. I think, however, there is a basis for difference between short confinement in a workhouse and imprisonment in the state penitentiary. I think, too, that there is a difference between incarceration as the only punishment meted out by the court and incarceration only in the event the convicted offender fails to pay the fine or comply with other condition imposed by the court.[2] Even though the penalties for violation of some highway traffic regulations are more severe than for some violations of the criminal code, I nevertheless would exclude such offenses from the rule on the ground that traffic infractions are historically considered to be less serious transgressions, distinguishable from more serious offenses and crimes, and that more summary disposition without the benefit of defense counsel is not inherently so unfair as to require the furnishing of counsel.[3]

We deal here with a rule of court which, although having constitutional overtones, is based neither on constitution nor statute. As for statute, the legislature has plainly drawn the line between felonies and gross misdemeanors on the one hand and simple misdemeanors on the other hand,[4] a consideration not without relevance in view of the legislative responsi-

---

[2] I recognize, of course, that for some indigents the requirement of an unpayable fine would be tantamount to direct imposition of the alternative incarceration, but at least part of the answer in such circumstances would be to assess fines more nearly in accordance with the offender's ability to pay. In many cases, on the other hand, the accused, even though indigent for purposes of furnishing counsel, can pay a fine or comply with other conditions imposed by the court, so that he carries the key to the workhouse in his own pocket.

[3] See, People v. Letterio, 16 N. Y. (2d) 307, 266 N. Y. S. (2d) 368, 213 N. E. (2d) 670. I do not argue that there may not be occasional miscarriage of justice in traffic cases, but I do argue that even in those cases such result might well be the same in many instances even if counsel is present.

[4] See, Minn. St. 611.07, subd. 1; 611.12.

bility to fund the extension of furnished counsel to indigents.[5] As for constitution, neither the United States Supreme Court nor this court has held that providing counsel for indigents accused of misdemeanors is constitutionally mandated. The United States Supreme Court has declined the opportunity to so extend the concept of constitutional guarantees, a forbearance dramatically underscored by the denial of certiorari in Winters v. Beck, 385 U. S. 907, 87 S. Ct. 207, 17 L. ed. (2d) 137, in which an Arkansas misdemeanant charged with "immorality" was sentenced to 30 days in jail and assessed a $254 fine and, because of his inability to pay the fine, was confined under the Arkansas "dollar-a-day" statute to incarceration at the state's prison farm for an additional 254 days. Mr. Justice Stewart, dissenting from the denial of certiorari, urged the court to (385 U. S. 908, 87 S. Ct. 208, 17 L. ed. [2d] 138) "clarify the scope of Gideon v. Wainwright" but, as he at the same time noted, he did "not suggest what the ultimate resolution of this problem should be." [6]

The apparent reticence of the United States Supreme Court to consider cases demanding furnished counsel for misdemeanants, I am convinced, has been an exercise in "creative ambiguity," the court wishing more time and experience to assess the probable consequences of extending constitutional requirements for counsel. I do not for a moment suggest that Minnesota should defer appropriate action until the United States Supreme Court by decision compels it as a constitutional requirement. I do think, however, that it would be constructive not to proceed

---

[5] It is true that lawyers will in many instances render gratuitous service for indigent offenders, as they have done so magnificently in the cases involving indigents accused of felonies and gross misdemeanors. However, I would rather doubt that lawyers will have the same enthusiasm for rendering service to indigents accused of traffic violations or some of the more petty misdemeanor crimes.

[6] There may be cases in other states where a result as in Arkansas under its statute may well be offensive, and which ultimately may cause the United States Supreme Court to expand the scope of the constitutional right to counsel; but such an extreme situation could not exist in Minnesota, where the penalty for a misdemeanor is limited to imprisonment for not more than 90 days or to payment of a fine of not more than $100. Minn. St. 609.03(3).

so far so soon in the absence of fuller opportunity to measure the impact of a less sweeping rule than announced in today's case.

The majority opinion does not suggest at what point the right of counsel would end. I should think, however, that the right now conferred will be substantially coextensive with the right of indigents accused of felonies or gross misdemeanors. One major consequence will be to require counsel for appellate review, and at this point a most serious burden may well result. It is a matter of general knowledge that many people who can afford to do so nevertheless do not engage counsel in defense of traffic violations,[7] let alone incur the expense of appellate review. The indigent defendant will not be so inhibited and would have the right to enter a plea of not guilty, no matter how baseless or dubious the defense—and to pursue the same defense on appeal. He is then favorably situated for "plea bargaining" to save the state substantial expense.[8] The

---

[7] It is also a matter of general knowledge, I think, that many defendants in cases of traffic violations demand a jury trial for purposes of delaying the ultimate day of reckoning, particularly in cases where the driver's license may be suspended or revoked.

[8] I recognize, with deference, the recommendation of the President's Commission on Law Enforcement and Administration of Justice which, as an "immediate minimum," recommended that counsel be appointed for "all criminal defendants who are in danger of *substantial* loss of liberty." (Italics supplied.) *The Challenge of Crime in a Free Society*, p. 150. However, in the discussion preliminary to that recommendation (p. 149) it stated:

"* * * The recommendations earlier in this chapter regarding precharge conference, plea negotiation and early factfinding will, if implemented, increase the number of lawyers needed. Nor does the need for a lawyer terminate after sentence, for the appellate process and the collateral proceedings that may follow it are uniquely the province of the law-trained man, able to deal with technical legal issues with an advocate's special skill.

"The provision of counsel entails costs beyond the expense of paying for their services. Counsel can be expected to require that the court deal deliberatively with his client; in many respects lawyers complicate the process. A court that has been adjudging men guilty and fixing their punishments in a matter of a few minutes is unlikely to be able to continue to do so when the accused persons before it are represented by lawyers. Defense counsel will demand compliance with the rules of evidence and make motions for

indigent defendant is accordingly granted *more than equal* protection of the laws.[9]

I concur in the remand in this case for a reevaluation of defendant's claim of indigence, and I agree that if the punishment is to be direct incarceration counsel must be appointed.

---

discovery and suppression of evidence. Sometimes they will seek delay for tactical advantages, cast doubt on a truthful witness, or challenge legitimate proof."

An indirect expense will be the time required for police officers to be in court when the defendant pleads not guilty, a real burden to under-manned police forces.

[9] Mr. Justice Harlan, joined by Mr. Justice Stewart in dissent, has warned that the uncritical application of the equal protection clause "can lead only to mischievous results." Douglas v. California, 372 U. S. 353, 361, 83 S. Ct. 814, 818, 9 L. ed. (2d) 811, 817. In the same case, Mr. Justice Clark, also dissenting, observed that neither the equal protection clause nor the due process clause should require a "useless gesture" without regard to "utter extravagance and a waste of the State's funds." 372 U. S. 353, 359, 83 S. Ct. 814, 817, 9 L. ed. (2d) 811, 816.