## CITY OF MINNEAPOLIS v. JACQUELINE PRICE.

159 N. W. (2d) 776.

June 14, 1968—No. 40,925.

*Robins & Meshbesher* and *Ronald I. Meshbesher,* for appellant.

*Keith M. Stidd,* City Attorney, and *Frederick W. Spencer,* Assistant City Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment convicting defendant of loitering with intent to solicit for purposes of prostitution. She was prosecuted pursuant to a complaint which charged that on December 15, 1966, she loitered at the corner of Fifth Street and Hennepin Avenue in Minneapolis with intent to solicit for prostitution, contrary to Minneapolis Code of Ordinances, § 870.010.

At 12:55 a. m. on December 15, 1966, Minneapolis Police Officer James O'Meara was on duty at the corner of Fifth and Hennepin. Defendant was on the same corner, and O'Meara asked her what she was doing on the street. She said that she was trying to make money. Informed by O'Meara that if she approached anyone for that purpose she would probably be arrested, she said that selling herself was the only thing she knew, and if that was against the law, so be it.

The complaint, issued December 21, 1966, was based upon this meeting. Defendant was arrested December 28 and arraigned in Hennepin County Municipal Court January 3, 1967. At arraignment, where she was represented by an attorney, she pled not guilty and demanded a jury trial. The court told her at that time to be prepared for trial on 2 hours' notice. On the day of arraignment, January 3, the state served Rasmus-

sen and Spreigl notices. The Spreigl notice stated that on the days immediately following December 15 defendant was observed talking to passing males in the Hennepin Avenue downtown area.

The case came on for trial on May 11, 1967, before a municipal judge and a jury. At that time defendant's attorney informed the court that he had not been paid. He said that he had been unable to contact defendant since his meeting with her at the initial proceedings. A letter which he sent notifying her that trial had been set was returned, "Addressee unknown." He had tried to call her three times but was unsuccessful. The court allowed him to withdraw from the case and denied defendant's request for a continuance because, he said, she had dealt with lawyers before and knew she would have to make financial arrangements to retain their services. Defendant claimed that she had no idea until the day before trial that her attorney intended to withdraw from the case. The court also implied that a continuance was inadvisable because of the crowded docket.

At this point another attorney appeared and said he would represent defendant. However, since both he and the other attorneys in his office had present commitments, he moved for a week's continuance. The court stated that even a week's continuance would not bring the case to trial, because defendant had said she was unable to make financial arrangements. Despite the fact that this attorney assured the court that he would go ahead with the trial whether or not defendant had made financial arrangements, the continuance was denied.

His motion failing, the attorney withdrew his offer. The case proceeded to trial without defense counsel. Defendant at no time took any part in the trial, either by cross-examining the state's witnesses or presenting evidence in her own behalf. The court did not question any of the state's witnesses, nor did he advise defendant as to any rights which she might have with respect to objection to evidence.

At trial, Officer O'Meara testified about the occasion which had led to the complaint. Two other police officers testified as to other occasions on which defendant had allegedly loitered to solicit customers. Officer Raymond Merchant testified that while on duty at 2:50 a. m. on December 16, 1966, he observed that defendant, who was standing on the corner

of Seventh and Hennepin, was talking to nearly every male who passed. Merchant said that he did not talk with defendant at the time.

Merchant was asked where he was at 10:30 p. m. on December 19. He said he didn't remember, but after being shown a memorandum he had made that evening, he said that at 10:30 he was on Hennepin between Fifth and Sixth and saw defendant standing in a doorway on Hennepin and talking to passing males. As before, he did not converse with defendant.

Merchant was again on duty December 21. Before being asked what happened on that date, he was shown a memorandum which he had made at the time. After referring to the memorandum, he said that he saw defendant on Fifth Street at 12:30 a. m. on December 21. He asked her how business was, and she replied, "Poor. You're tough on us hustlers." Merchant testified that, as commonly used, "hustler" means "prostitute."

Another officer, Veryl Burchett, testified that he was on duty on Fifth and Hennepin at 11:25 p. m. on December 17. Again the prosecutor referred the witness to a memorandum made at the time without ascertaining if he had any independent recollection of the events in question. After referring to the memorandum, Burchett said that at the time and place in question he observed defendant in a doorway with her hands in a man's pocket. When she saw him, she came out of the doorway and Burchett talked to her. She told him she was hustling for Christmas money and could not afford to quit at that time.

Burchett was again on duty on Hennepin between Fifth and Sixth at 10:30 p. m. December 19. The prosecutor once again presented him with a memorandum, without determining if it was necessary to refresh his memory. After looking at the memorandum, he recounted that at 10:30 p. m. on December 19 he observed defendant talking to passing men as she walked the street or stood in doorways.

The jury returned a guilty verdict. The court accepted this verdict and sentenced defendant to 90 days in the workhouse. The court initially refused a stay of execution and then stated that it would be granted only if an appeal bond of $4,000 were posted. Defendant appealed from the judgment and sentence. Thereupon this court ordered that as soon as

a $500 recognizance bond was filed execution was to be stayed and defendant released pending outcome of the appeal.

Defendant raises four issues on appeal. She contends that the evidence is insufficient to sustain the verdict; that she was denied her right to counsel; that it was prejudicial error, creating artificial corroboration in the eyes of the jury, to allow the officers to refer to the memoranda without ascertaining whether they could recall the events in question without resort to those memoranda; and that it was prejudicial error, amounting to comment on defendant's failure to testify, for the trial court to ask defendant in the jury's presence whether she had any testimony to present and then to instruct the jury to ignore her failure to testify.

■ Assuming, as we must for purposes of determining its sufficiency, that all evidence received was admissible, there is sufficient evidence to sustain the jury's verdict. Officer O'Meara's testimony tends to support a conclusion that defendant was loitering with the intent to solicit for prostitution, and it is corroborated by the testimony of the other officers. No evidence was submitted on defendant's behalf. On this evidence, and bearing in mind that this court will upset findings of fact only if they are clearly contrary to the evidence, the jury's finding is adequately supported.

Defendant makes much of O'Meara's testimony that he warned defendant that if she approached men on the street it "would probably lead to an arrest." The conditional nature of this warning, she contends, shows that O'Meara did not think she was violating any law at the time the warning was given. Of course, it shows no such thing. O'Meara simply said that if she solicited she would probably be arrested. Such a statement is not inconsistent with a belief that, at the time, she was loitering with intent to solicit. At most, the statement shows that O'Meara thought no charges would be made unless she actually solicited.

■ Defendant next contends that the trial court abused its discretion in denying her motion for continuance. We agree that, even when viewed in light of the rule that a conviction will not be reversed for denial of a motion for continuance except when such denial was a clear abuse of discretion, State v. Huber, 275 Minn. 475, 148 N. W. (2d) 137; State v. Mohrbacher, 173 Minn. 567, 218 N. W. 112, the denial here cannot be sustained.

There are no Minnesota cases directly in point, but cases from other jurisdictions are nearly unanimous in upholding the right to continuance in situations similar to this one. While a trial court is justified in denying a motion for continuance if a defendant discharges his counsel for purposes of delay, Mixon v. Commonwealth, 282 Ky. 25, 137 S. W. (2d) 710, or if he fails to act diligently to replace counsel who withdraws well in advance of trial, United States v. Yager (7 Cir.) 220 F. (2d) 795, it is reversible error to deny the motion when, without fault of the defendant, the original defense counsel withdraws on short notice. People v. Manchetti, 29 Cal. (2d) 452, 175 P. (2d) 533. In Manchetti the court reversed a conviction obtained after denial of a motion for continuance even though a new attorney was substituted on the day of trial. If it is error to force a new attorney to go to trial without adequate preparation, it would seem to be even more clearly error to force a defendant to go to trial without any legal representation at all.

The case of Rice v. State, 220 Ind. 523, 44 N. E. (2d) 829, is virtually on all fours with this case. There, original defense attorneys had been allowed to withdraw on the day before trial. Other attorneys offered to represent the accused if the trial was postponed. The trial court denied a continuance. In reversing the conviction, the Indiana Supreme Court held that the motion to withdraw should have been denied or the motion for continuance granted. See, also, United States ex rel. Davis v. McMann (N. D. N. Y.) 252 F. Supp. 539; Cash v. Culver (Fla.) 122 So. (2d) 179.

Any doubt as to the wisdom of the above cases is dispelled if we look to the course of trial in this case. Although under our judicial system cross-examination is one of the most cherished safeguards of an individual accused of crime, defendant was unable to cross-examine the witnesses presented by the state. Again, and without at this time getting into the merits of the issue of admissibility, defendant was unequipped to cope with the highly questionable practice, much used in this case, of letting witnesses refer to memoranda without determining whether they could recall the events in question without recourse to those memoranda. Furthermore, she had no way of knowing that her rights were being violated when the trial court, in a move clearly condemned by this court,

made an allusion to her failure to testify. The conduct of the trial here gives ready confirmation to our recent observation that "it is hardly conceivable that a person ignorant in the field of law can adequately defend himself without the assistance of counsel." State v. Borst, 278 Minn. 388, 398, 154 N. W. (2d) 888, 894.

There was no basis for the trial court's conclusion that defendant was aware that her counsel might withdraw. Thus, the only possible justification for denying the motion for continuance is the unsettling effect a continuance would have on the court calendar. Such a minor inconvenience hardly justifies deprivation of a right as basic as the right to counsel. In Cash v. Culver, *supra,* the conviction following the trial court's denial of a continuance was reversed even though the state had summoned out-of-state witnesses who would be inconvenienced by delay. In State v. Borst, *supra,* the state had argued that there were so many misdemeanor cases that the judicial system would be unduly strained if misdemeanants were afforded appointive counsel. This court rejected the argument. "We are persuaded," said the court, "that the possible loss of liberty by an innocent person charged with a misdemeanor * * * is too sacred a right to be sacrificed on the altar of expedience." 278 Minn. 399, 154 N. W. (2d) 894. If the right to counsel will not bow to the potentially serious problem caused by increased demand for appointive counsel, it most certainly will not yield to the relatively insignificant problem of rearranging the court calendar.

It follows that defendant is entitled to a new trial in which she is represented by counsel.

We find it unnecessary to discuss the other two issues raised by defendant. However, since there may well be a new trial, we feel it appropriate to state that at a new trial memoranda should not be used to refresh a witness' memory unless it is first ascertained whether the witness can recall the events in question without resort to a memorandum. Stahl v. City of Duluth, 71 Minn. 341, 74 N. W. 143; State ex rel. Liimatainen v. Boekenoogen, 140 Minn. 120, 167 N. W. 301.

Reversed and new trial granted.