CITY OF MINNEAPOLIS, Respondent,

v.

Charles P. WENTWORTH, Relator.

No. 46046.

Supreme Court of Minnesota.

Aug. 11, 1978.

Robert E. Faricy, St. Paul, for relator.

J. Walter Duffy, Jr., City Atty., Minneapolis, for respondent.

Heard before PETERSON, SCOTT and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

■ Relator Charles P. Wentworth seeks review by writ of certiorari [1] of the May 6, 1975 judgment of Hennepin County Municipal Court, finding him guilty of 172 separate petty misdemeanors (parking violations) at a total imposed fine of $4,300. In view of the circumstances of the case and the severity of the fine, we find that Wentworth should have been advised of his right to retain private counsel, and accordingly reverse for a new trial.

Wentworth, doing business as Chuck's Used Cars, 1801 East Lake Street in Minneapolis, buys and sells inexpensive used cars. On each retail sale, he completes and submits vehicle title transfer documents to the Division of Motor Vehicle Services, Department of Public Safety of the state of Minnesota. Administrative procedures within the division may delay entry of the change of title for periods of up to two months, although the eventual entry will show title transfer as of the date of application. During the title hiatus, however, it is not unusual for Wentworth's customers to incur, and ignore parking violations. The standard police procedure is to compare vehicle license numbers with current, apparent, registered owners identified in Department of Public Safety records and to initiate a series of billing warnings and letters which, if ignored, culminate in a traffic summons and complaint.

Because of the delayed record of title transfer, Wentworth commonly receives parking violations notices due his customers. Apparently, over the years, a practice developed whereby Wentworth would wait for the sheriff's delivery of "batches" of 10 or 15 summonses and complaints, and, using the information contained therein, procure verification of change of title from the Department of Public Safety and have the complaints dismissed. For one reason or another, the sheriff's office practice of "batching" tags was suspended between 1971 and 1975, and in April 1975, Wentworth received approximately 135 summonses. It became apparent to Wentworth that he would not have time to clear up the vehicles' titles before the May 5, 1975 court date. According to Wentworth, he contacted the sheriff's office to arrange a postponement; however, that office would not have authority to change the date, and its records do not show such an arrangement. In any event, Wentworth did not appear in court on May 5, and the presiding judge issued a bench warrant for his arrest.

1. Normally, such review would proceed via appeal to the district court. Minn.St. 484.63, 487.39. See, also, Rules 23.05, subd. 3, 28.01, subd. 2, Rules of Criminal Procedure (effective all criminal actions commenced July 1, 1975). Here, however, each complaint constitutes a separate case and would require 172 separate appeals. We, therefore, consolidate our review under the writ procedure.

This court has power to issue extraordinary writs where "necessary to the execution of the laws and the furtherance of justice." Minn.St. 480.04. Proceedings in municipal courts shall be removed to this court "in the same manner, upon like proceedings and with like effect as from district courts." Minn.St. 488A.01, subd. 11.

Wentworth was taken into custody the following day, booked, fingerprinted, and, unaccompanied by counsel, brought before the municipal court. On his appearance, additional outstanding summonses and complaints were served on him, bringing the total number to 186. Fourteen of the complaints were dismissed by the municipal court on the basis of the evidence of change of ownership which Wentworth was able to present; Wentworth was found guilty of the remaining 172 and fined $25 each, a total fine of $4,300.

■■■ The sole issue for consideration is whether Wentworth should have been advised of his rights to procure assistance of counsel.[2]

At the time of relator's arrest, the right of a defendant to be informed of his right to counsel was set forth in Minn.St. 630.10:

"If the defendant shall appear for arraignment without counsel, he shall be informed by the court that it is his right to have counsel before being arraigned, and shall be asked if he desires the aid of counsel."

In *State v. Martin*, 223 Minn. 414, 417, 27 N.W.2d 158, 160 (1947), we held that Minn.St. 630.10 had no application to prosecutions for violations of municipal ordinances. More recently, in *State v. Moosbrugger*, 263 Minn. 56, 116 N.W.2d 68 (1962), we reexamined *Martin*,[3] *supra*, noting that prosecutions under municipal ordinances were neither civil nor criminal, but had been held "sui generis," and recogniz-

ing the historical basis for their ambivalent status in Minnesota. 263 Minn. 61, 62, 116 N.W.2d 72. We went on to limit *Martin* and *Weich* to their facts and caution that: "It might be observed that good practice in such prosecutions, when punitive ordinances are involved, would be to adhere to the spirit of § 630.10."[4] We now hold that defendants should be advised of their right to seek legal assistance where, as here, the potential penalty for municipal ordinance violations, though non-incarcerative, involves serious economic hardship.

The $4,300 fine imposed was a serious penalty to a defendant whose net business income amounts to approximately $15,500 annually. Wentworth should have been advised that he could contact and employ private legal counsel to assist him. Although Mr. Wentworth has been less than diligent in arranging for a speedy resolution of the title confusion, we believe that, under the circumstances of this case, he is entitled to a new trial in the 172 parking violations.

Reversed and remanded for a new trial.

---

2. We emphasize that this case does *not* present the issue of a defendant's right to appointed counsel, at public expense, in non-incarceration offenses. See our opinion in *State v. Borst,* 278 Minn. 388, 397–98, 154 N.W.2d 888, 894 (1967), reserving the question.

 By affidavit, Wentworth admits to a net income in excess of indigency standards. See, Rules 5.01, 5.02, Rules of Criminal Procedure, and accompanying Comment.

3. We also reexamined *State ex rel. Weich v. City of Red Wing,* 175 Minn. 222, 220 N.W. 611 (1928) and stated that 630.10 had been inapplicable there as well. *State v. Moosbrugger,* 263 Minn. 56, 58, 116 N.W.2d 68, 72. *Weich* actually addressed only the right to counsel as provided by Article 1, § 6 of the Minnesota Constitution, but in *Martin* we observed that

630.10 also would be immaterial in the *Weich* circumstances. *State v. Martin,* 223 Minn. 414, 417, 27 N.W.2d 158, 160 (1947).

4. Consistent with *Martin* and *Weich, supra,* present Rule 23.03, Rules of Criminal Procedure, does not clearly provide for notice of the right to be assisted by counsel in petty misdemeanors, although Rule 23.03, subd. 3, requires written advice to defendant, before paying fine, that payment is an admission that defendant understands the right to counsel is thereby waived. The right to counsel is expressly available in the limited circumstances, under Rule 23.05, subd. 2, Rules of Criminal Procedure, where a misdemeanor certified as "petty" under Rule 23.04 involves moral turpitude.